GRONLIE v POSITIVE SAFETY MANUFACTURING COMPANY

1. APPEAL AND ERROR—JUDGMENT NOTWITHSTANDING THE VERDICT—
FACTS—INFERENCES.

The reviewing court, in determining an appeal by a plaintiff from a judgment of a lower court granting a defendant's motion for judgment notwithstanding the verdict, must view all facts and legitimate inferences therefrom in a light most favorable to the plaintiff.

2. NEGLIGENCE—DANGER—KNOWLEDGE—CAUTIONARY EFFECT—CON-
DUCT—VITIATION—DUTY TO WARN.

The general rule is that there is no duty to warn a person of dangers of which he is aware; however, the rule is not applicable to a negligence case involving the operation of a press equipped with a safety device which malfunctioned where, although the plaintiff had actual knowledge of the dangers of placing his hands in the point of operations of a press, the jury could reasonably have found that the defendant's conduct, in representing the safety device to be safe even with the operator's hands in the jaws of the press, vitiated any cautionary effect that the knowledge of the danger might have had.

3. NEGLIGENCE—PROXIMATE CAUSE—JURY QUESTION.

Proximate causation of an injury, or lack of it, is generally a question of fact to be determined for the jury.

4. NEGLIGENCE—PROXIMATE CAUSE—SUPERSEDING CAUSE.

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if the actor, at the time of his negligent conduct, should have realized that a third person might so act or a reasonable man, knowing

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 112.
  5 Am Jur 2d, Appeal and Error §§ 608, 886.
[2] 57 Am Jur 2d, Negligence §§ 37, 84, 116, 125, 126.
[3] 57 Am Jur 2d, Negligence §§ 136, 137.
[4] 57 Am Jur 2d, Negligence §§ 185, 383–385.

the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted; thus in an action against a manufacturer of a pull-back safety device for presses by an employee of a purchaser of such a device who was injured when the device malfunctioned the negligence of the purchaser in failing to provide adequate maintenance cannot be held to be a superseding cause as a matter of law where there was evidence which showed that the defendant manufacturer was aware of the fact that its device was receiving inadequate inspection and maintenance and that defendant had notice of injuries to others using the safety device; the intervening negligence of the third-person employer was reasonably foreseeable and did not alter in kind the type of injury to which the negligence of the manufacturer of the safety device exposed the injured employee.

Appeal from Wayne, Allan C. Miller, J. Submitted Division 1 May 15, 1973, at Detroit. (Docket No. 13707.) Decided October 22, 1973. Leave to appeal denied, 391 Mich 795.

Complaint by John Gronlie against the Positive Safety Manufacturing Company for damages for injuries sustained when a safety device on a power press malfunctioned. Judgment for defendant notwithstanding a verdict for plaintiff. Plaintiff appeals. Reversed and remanded with instructions.

*Philo, Maki, Ravitz, Cockrel, Robb, Karfonta & Spearman,* for plaintiff.

*Richard B. Kramer* (by *Richard B. Kramer* and *Alex H. Terzian, III),* for defendant.

Before: R. B. BURNS, P. J., and V. J. BRENNAN and VAN VALKENBURG,* JJ.

V. J. BRENNAN, J. Plaintiff appeals from the entry of a judgment notwithstanding the verdict (GCR 1963, 515.2) overturning an award granted

_____

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

to him by a jury in the Wayne County Circuit Court of $160,000 plus interest.

Plaintiff, John Gronlie, worked for Scott's Incorporated (now Chase Manufacturing Co.) in Douglas, Michigan. On October 28, 1965, plaintiff reported for the 11 p.m. to 7 a.m. shift and began punching out taillight sections for automobiles on a crank-driven press equipped with a device known as the Posson's safety or pull-back device manufactured by defendant. This device was designed to operate by pulling the operator's hands away from the impact point of the press as the ram descended. While working on this press and using the safety device, plaintiff suffered traumatic amputation of fingers on both hands when the ram or slide of the power press descended and the safety device failed to remove his hands from the impact point of the press.

Plaintiff brought this action against Positive Safety Manufacturing Company, who manufactured the device, under three broad theories of negligence: (1) defendant should have warned plaintiff not to place his hands in the jaws of the press regardless of the protection afforded by the pull-back device and to use hand tools in placing objects into the press and in removing them; (2) defendant should have warned plaintiff that a high degree of maintenance was required for the pull-back device; and, (3) that defendant should not have marketed the pull-back device at all due to its design drawbacks.

The testimony adduced at the trial reveals that the accident occurred when the press double-tripped and the cable designed to pull plaintiff's hands away snapped. An investigator of Corporate Services, Inc., a company engaged by plaintiff's employer to make safety recommendations, testified

that the cable broke at a point where it was frayed and worn. He attributed this fraying to a lack of proper maintenance and inspection. An instruction manual which accompanied the delivery of the device emphasized the need for periodic inspections of the cables and described the procedure by which such an inspection should be made. The procedure followed by plaintiff's fellow employees in inspecting the cables did not comply with the instruction manual's directions. These employees merely ran a gloved hand down the cable to see if it would catch any frayed ends instead of bending the cable at a ninety-degree angle to observe if there were any embrittled or frayed strands as instructed. Defendant's vice president, on cross-examination, admitted, however, that 49% of the plants that used the device also had low average maintenance, adjustment, and inspection techniques.

The guiding rule of safety in the operation of punch-presses, as stated by one of plaintiff's expert witnesses, is to "never allow the man to put his hands into the point of operation". Despite this rule, the safety device on the press on which the plaintiff was working was adjusted to allow the plaintiff to place his hands into the jaws of the press. No hand tools were used to place material in, or remove the product from, the dies on the press. The decision as to how parts would be fed into a press was stated to be normally made by the production people. Testimony was presented, however, which showed that the instruction manual which accompanied the press contained an illustration which showed the operator's hands under the ram of the press. There was also testimony elicited which showed that the device was demonstrated at conventions by the defendant with the

operator placing his hands between the jaws of the press and that users of the press were instructed by the company that the device could be safely operated in that manner. The instruction manual contained no warning as to the dangers of placing hands into the point of operation and no such warning was displayed on the safety device or the machine. The manual also said nothing about the use of hand tools. Plaintiff's two expert witnesses testified that in their opinion the instruction manual did not adequately instruct as to accident prevention or safety operations because of the illustration showing the operators hands in the jaws of the press and because no instruction was given as to the use of hand tools. Plaintiff did, however, use hand tools on other setups and generally recognized the danger of placing his hands in the point of operation.

The circuit court granted the defendant's motion for judgment notwithstanding the verdict on the basis that "this accident was caused solely by the double tripping of the press and improper maintenance of employer. No conduct of the Defendant contributed to the event." The court stated that "a warning or the lack of it could not be a proximate cause of the accident".

In determining an appeal by a plaintiff from a judgment of a lower court granting a defendant's motion for judgment notwithstanding the verdict, the reviewing court must view all facts and legitimate inferences therefrom in the light most favorable to the plaintiff. *Marietta v Cliffs Ridge, Inc,* 385 Mich 364; 189 NW2d 208 (1971); *Kroll v Katz,* 374 Mich 364; 132 NW2d 27 (1965).

Viewing the facts in this manner, we hold that it was error for the trial court to grant defendant's motion for judgment notwithstanding the verdict.

There was evidence on this record from which the jury could properly have found that the defendant was negligent in failing to warn plaintiff of the danger of placing his hands into the point of operation.

The general rule is that there is no duty to warn a person of dangers of which he is aware. *Bisceglia v Cunningham Drug Stores,* 350 Mich 159; 85 NW2d. 91 (1957). This rule is not applicable here, however. While it is true that the plaintiff had actual knowledge of the dangers of placing his hands in the point of operation of a press, the jury could reasonably have found that the defendant, in representing the safety device to be safe even with the operator's hands in the jaws of the press, vitiated any cautionary effect that that knowledge might otherwise have had. The jury could have found that the defendant's representations in this regard led the plaintiff to believe that he would be perfectly safe in placing his hands in the jaws of the press. The fact that a person had notice at one time of a danger or defect in a product does not relieve the manufacturer of his duty to warn in every case. See *Comstock v General Motors Corp,* 358 Mich 163; 99 NW2d 627 (1959). Under these circumstances the question of defendant's negligence in failing to warn was for the jury.

The circuit court decided that the failure to give a warning could not have been the proximate cause of plaintiff's injuries. Proximate causation, or the lack of it, is generally a question of fact to be decided by the jury. *Davis v Thornton,* 384 Mich 138; 180 NW2d 11 (1970); *Comstock v General Motors Corp, supra; Harding v Blankenship,* 274 Mich 118; 264 NW 312 (1936). Therefore, unless it can be said that the negligence of plaintiff's employer in failing to provide adequate main-

tenance for the safety device operated as a superseding cause breaking the chain of negligence, the issue of proximate causation, under the facts of this case, should have been left to the jury.

In *Comstock v General Motors Corp, supra,* at 179; 99 NW2d at 635, our Supreme Court addressed itself to the issue of what constitutes a superseding cause and cited with approval the following rule provided in 2 Restatement 2d, Torts, § 447, p 478:

" 'The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
" '(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
" '(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted.' "

At the trial, testimony was presented which showed that the defendant was aware of the fact that its device was receiving inadequate inspection and maintenance. There was also evidence which showed that defendant had notice of injuries to other persons using their pull-back safety device. Under these circumstances the negligence of plaintiff's employer cannot be held to be a superseding cause. The intervening negligence of plaintiff's employer was reasonably foreseeable and did not alter in kind the type of injury to which defendant's negligence exposed the plaintiff.

Reversed and remanded with instructions to reinstate the verdict and award of the jury.

All concurred.