Albert TOTH, et al., Plaintiff-Appellant,

v.

The YODER COMPANY, a foreign corporation, Defendant-Appellee.

No. 82–1280.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1983.

Decided Dec. 6, 1984.

Rehearing and Rehearing En Banc Denied Feb. 8, 1985.

Krupansky, Circuit Judge, filed a dissenting opinion.

Larry A. Smith (argued), Lakin, Worsham & Victor, Southfield, Mich., for plaintiff-appellant.

Timothy D. Wittlinger, Hill, Lewis, Adams, Goodrich & Tait, Richard Sanders (argued), Detroit, Mich., for defendant-appellee.

Before LIVELY, Chief Judge, KRUPAN-SKY, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.*

FAIRCHILD, Senior Circuit Judge.

Plaintiff appeals from a judgment for defendant, entered notwithstanding the verdict in plaintiff's favor. In ordering judgment, the district court stated that if wrong in so doing, the court would grant a new trial on the ground that the verdict is against the great weight of the evidence. We reverse and remand for entry of judgment on the verdict.[1]

The plaintiff, Albert Toth, was injured while operating a cold roll-forming machine manufactured by the defendant Yoder Company and owned by his employer, Modern Materials Corporation. A cold roll-forming machine is equipped with many passes, each pass consisting of an upper and lower shaft, having a set of rolls and spacers of differing sizes, mounted on each shaft. A flat strip of metal, usually from a metal coil, is fed through the machine from pass to pass gradually being formed into the required shape by the opposing rolls. A "nip point" exists where two rolls come together and perform work on the metal strip. The Yoder cold roll-forming machine had twelve passes when Modern Materials first received it from Yoder in 1958 and two more were added later. A clutch bar ran the length of the machine along the front, perpendicular to the shafts, which was pushed toward its right end to engage the clutch and toward its left end to disengage it. The machine could be "jogged" by use of the clutch bar, slipping the clutch to thread the metal gradually through the machine at the beginning of an operation. The machine as delivered was equipped with an on/off switch located at the operator's stand at the entry end of the machine.

Modern Materials made a number of alterations to the Yoder machine between 1958 when it was delivered and 1977 when Mr. Toth was injured. The machine was rewired to provide two toggle type on/off switches at each end of the machine. The main motor drive for the machine was changed from 15 to 30 horsepower. Four "jog buttons" were added along the front of the machine to thread the metal strip through the machine when commencing a run. An air cylinder was attached to the clutch bar so that it operated mechanically rather than manually. Finally, a cord, running the full length of the machine, was added. It could be pulled by hand to shut off the electric motor in an emergency.

On July 11, 1977 plaintiff was advised by an inspector that there was a crease in the aluminum coming out of the machine. Plaintiff cut the strip of aluminum sheet metal, ran out the material then in the machine, shut the machine off, apparently using one of the added toggle switches, and began taking the rolls in the appropriate pass apart to realign a spacer. Mr. Toth was positioned near the end of the pass, and had been taking the rolls off the last pass, putting a spacer on, and had the pass almost back together with the rolls in place, when the machine unexpectedly began to turn the rolls. The plaintiff's hand was drawn into the nip point between the rolls and badly crushed. While the plaintiff was uncertain of what started the machine, it appears that he brushed against one of the jog buttons along the front of the machine, causing the rolls to turn. There were no guards furnished with the machine to prevent the operator or other person from having access to the roll nip points.

The plaintiff alleged that his injury was proximately caused by a design defect of the machine, the absence of guards for the roll nip points. The defendant alleged that the machine as designed and delivered to Modern Materials would not have produced such an accident. As originally designed, an operator could only stop the rolls from turning, so as to disassemble and realign

---

* The Honorable Thomas E. Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. Jurisdiction is founded on diversity. Both parties have treated Michigan law as governing substantive questions.

a pass, by following one of three procedures. First, the operator could turn the main power switch to the off position, shutting off all power to the roll-former. Second, the operator could turn the motor off at the on/off switch located at the operator's stand. Third, the operator could disengage the clutch by using both his hands. Any of these procedures would have prevented the rolls from turning until he or someone else turned the power or motor on, or engaged the clutch. The defendant argued that the accident could only occur as it did because of modifications made by the plaintiff's employer, specifically the on/off toggle switches and the jog buttons, which caused the rolls to turn. The jury returned a special verdict finding that defendant was negligent, that the negligence was a proximate cause of plaintiff's injury, that plaintiff was not guilty of contributory negligence, and that plaintiff's damages amounted to $300,000.

The district court, however, granted defendant's motion for judgment *n.o.v.*, holding that:

> [T]he machine that caused the injury to the plaintiff was substantially different than the machine that was manufactured by the defendant. It had been modified in many ways. If the machine had not been modified, the accident could not have happened. When this is the case, the manufacturer of the machine is not liable.... In this case, the records show that the machine as it was manufactured and delivered would not have caused the injury regardless of the claims made by the plaintiff as to the manufacturer's wrongdoing. Thus it seems to the court that the motion for directed verdict should have been granted and that a motion for judgment notwithstanding the verdict should be granted. If the court is wrong in this matter, the court would grant a motion for new trial on the ground that the verdict is against the great weight of the evidence.

(January 20, 1982 Order of the Court, pp 2–3).

The plaintiff contends that the trial court's reasoning erroneously implied that the plaintiff must show that the defect in defendant's machine was the *sole* proximate cause of the injury rather than showing that the defect was *a* proximate cause, and further contends that modifications made by plaintiff's employer were not superseding causes of the injury. The defendant contends that judgment *n.o.v.* was proper because liability may attach to the manufacturer only when the defective product reaches the user or consumer without substantial change in the condition in which it is sold. The defendant argues that when a third party's alterations or modifications of the product cause the injury, the original manufacturer is not liable.

The defendant essentially argues the substantial change standard of § 402A(b) of RESTATEMENT (SECOND) OF TORTS, which imposes strict liability only where the defective product reaches "the user or consumer without substantial change in the condition in which it is sold." The language chosen by the district court may reflect the same view. It seems likely that if this standard did apply, the modifications made to the machine by the plaintiff's employer would be substantial enough to preclude liability on the part of the manufacturer. However, in Michigan only two theories of recovery are recognized in products liability cases, negligence and implied warranty, not strict liability. *Hartford Fire Insurance v. Walter Kidde & Co.*, 120 Mich.App. 283, 328 N.W.2d 29 (1982); *Johnson v. Chrysler Corporation*, 74 Mich.App. 532, 254 N.W.2d 569 (1977). Thus the provisions of the RESTATEMENT pertaining to strict liability do not appear to apply.

■ In Michigan, negligent design falls under both a negligence theory and an implied warranty theory of liability because a manufacturer has a duty to produce a reasonably fit product under either concept. *Hartford Fire Insurance Co. v. Walter Kidde & Co.*, 328 N.W.2d at 33; *Elsasser v. American Motors Corp.*, 81 Mich.App. 379, 385, 265 N.W.2d 339 (1978).

Under a negligence theory, the plaintiff must establish the traditional common-law elements of duty, breach, damage and causation. (Citation omitted.) To establish breach of implied warranty, the plaintiff must show that a defect in the product, attributable to the manufacturer, caused his injuries.

*Abel v. Eli Lilly & Co.*, 94 Mich.App. 59, 70, 289 N.W.2d 20, 23–24 (1979), *modified and affirmed*, 418 Mich. 311, 343 N.W.2d 164 (1984). The Court of Appeals of Michigan has stated that a manufacturer's liability is predicated upon whether he has failed to protect against a risk that is unreasonable and foreseeable by the manufacturer. *Hartford Fire Insurance v. Walter Kidde & Co.*, 328 N.W.2d at 33.

 In reviewing the grant of a judgment *n.o.v.*, this circuit has long held that the state law standard controls in a diversity case. *See Gold v. National Savings Bank of City of Albany*, 641 F.2d 430, 434 (6th Cir.1981); *Warkentien v. Vondracek*, 633 F.2d 1 (6th Cir.1980); *Garrison v. Jervis B. Webb Co.*, 583 F.2d 258 (6th Cir. 1978).[2] In Michigan, the rule of law with respect to appellate review of judgments *n.o.v.* appears to be identical to the federal standard, which is referred to as the "reasonable minds" test. Under this standard, a judgment *n.o.v.* may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Gillham v. Admiral Corporation*, 523 F.2d 102, 109 (6th Cir.1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976). The issue raised by a motion for a judgment *n.o.v.* is whether there is sufficient evidence to raise a question of fact for the jury. This determination is one of law to be made by the trial court in the first instance. In determining whether the evidence is sufficient, the trial court may not weigh the evidence, pass on

**2.** The continued validity of this rule is open to question, especially in light of *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 649, 97 S.Ct. 835, 836, 51 L.Ed.2d 112 (1977) ("The proper role of the trial and appellate courts in the federal system in reviewing the size of jury verdicts is, however, a matter of federal law."). *See Gold v.*

the credibility of witnesses, or substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104–1105 (6th Cir.1978). If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted. *Id.* An appellate court, when reviewing the trial court's decision, is bound by the same standard. *Morelock v. NCR Corp.*, 586 F.2d at 1105; *Gillham v. Admiral Corp.*, 523 F.2d at 109.

A recent statement of the Michigan standard for judgments n.o.v. is found in *Cormack v. American Underwriters Corp.*, 94 Mich.App. 379, 288 N.W.2d 634 (1979). The Michigan court wrote that:

A judgment n.o.v. on defendant's motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff. In reviewing a motion for judgment n.o.v., the Court must give the non-moving party the benefit of every reasonable inference that could be drawn from the evidence. *If reasonable minds could honestly disagree as to whether the plaintiff has satisfied his burden of proof or the necessary elements of his cause of action, judgment n.o.v. for the defendant is improper.*

*Warkentien v. Vondracek*, 633 F.2d 1, 7 (6th Cir.1980). This court, in *Warkentien v. Vondracek*, found the above language to be virtually identical to that in *Morelock* and concluded that the Michigan standard for judgments *n.o.v.* is legally equivalent to the federal standard.

*National Savings Bank of City of Albany*, 641 F.2d 430, 434 fn.3 (6th Cir.1981).

In this case, as indicated in the text of the opinion, the state and federal standards are essentially the same, so it is of no consequence whether we apply the state or federal standard in diversity cases controlled by Michigan law.

The district judge did not phrase his analysis in terms of negligence or causation. In our review we must determine whether the evidence of record could support the finding of negligence, and, if so, whether it could support the finding of proximate cause.

The record supports the proposition that leaving an accessible nip point unguarded when a practical guard is available can be found unreasonably dangerous and negligent. Mr. Krauss, defendant's Manager of Engineering Development, and Mr. Josephs, plaintiff's expert, both testified in this area. Mr. Krauss testified that a nip point would be recognized as a hazard, and that there are nip points where the rolls come together. He identified other nip points on this machine, where gears come together or a belt passes over a pulley. They are guarded. Mr. Josephs also identified the nip points and testified to his opinion that nip points must be guarded and that this principle was part of the state of the art in 1957 and years before.

Defendant argues that Josephs' testimony should be ignored because of his apparent misreading of a particular document. He brought with him four documents as a sample of literature on the subject predating 1957. He quoted from a Regulation in a Model Code a portion calling for guards on the inrunning side of rolls "so that the operator can't get his hands caught in the rolls." On cross-examination defendant brought out that although the Regulation pertained to rolling mills including the type here involved the quotation was from a part of the Regulation which apparently referred to "rolls or machines not specifically mentioned in this regulation." Defendant made no motion to strike Mr. Josephs' statement of his opinion. Assuming Josephs was mistaken in his reading, it was clear from the context that this Regulation was not the only support for his testimony. We do not agree that his opinion "must be ignored."

Mr. Krauss acknowledged that a type of barrier guard was available in 1957 which would, when in place, have prevented plaintiff reaching close to the nip point. The guard could be removed, but the removal would cut off the power so that the motor could not drive the rolls. He also described a device using light beams so that when a person reaches into the danger zone, his arm would interrupt a light beam and cause the power to cut off. He was not certain that this device was known in 1957, although it is used on defendant's current models. Mr. Josephs testified that both types were available in 1957. Mr. Krauss considered guarding impractical because of certain operations, such as threading the metal strip through the machine, where the operator must have his hands close to the rolls and be able to jog them at the same time.

The nip points were accessible to any person standing at points along the side of the machine near the ends of the passes. Mr. Krauss acknowledged that "most workmen with normal length arms would be able to reach into the nip point."

The real argument between the parties concerns the degree of probability that persons would extend their hands into the zone of danger. On the one hand it seems clear enough that if the jog buttons had not been added anyone performing the task being performed by plaintiff would have shut off the power or the motor or disengaged the clutch before putting his hands in proximity to the rolls. The rolls could not then have started to turn unless some other person intervened.[3] Krauss testified

---

**3.** While the operator was adjusting the machine with the power off, there was nothing to prevent a third person from activating the machine by using the main power switch or the on/off switch at the operator's stand.

In *Byrnes v. Economic Machinery Company,* 41 Mich.App. 192, 200 N.W.2d 104 (1972), the plaintiff was injured while adjusting brushes on the defendant's bottle labeling machine. Adjust-

ing the machine required removal of a guard over moving parts in the machine and the manual adjustment of the brushes. The adjustment was done on a trial and error basis until the machine put the labels on properly. While plaintiff's right hand was still inside the machine, his supervisor ordered a fellow employee to activate the machine and as a consequence the plaintiff was injured. The Michigan Circuit

that the operator would perform a task such as threading a metal strip through the passes. This task would require him to reach into the machine, but it would be necessary to be able to jog the rolls, and interruption of the power by an interlocking guard or light beam would not be feasible. There was no other evidence from either party bearing on the probability that others, such as maintenance workers or the like, would have occasion to put their hands near the rolls. Defendant offered no evidence to show that such other workers would not be endangered.

There was evidence from which the jury could have found that the addition of jog buttons was probable and foreseeable. As originally supplied, the machine was jogged by use of the clutch bar, and in starting it slowly and gradually it was necessary to slip the clutch. Slipping the clutch would cause wear and eventually necessitate its replacement. Defendant had itself sold machines equipped with jog buttons, and its current model is equipped with a cord and a button for that purpose. A jury could have reasonably concluded that the addition of electrical jog buttons, which would not have the wear characteristics of the mechanical clutch, was a foreseeable alteration of the machine.

■ A manufacturer has a duty to use reasonable care in designing his product to guard against an unreasonable and foreseeable risk. *Byrnes v. Economic Machinery Company*, 41 Mich.App. 192, 200 N.W.2d 104, 108 (1972). This may even include misuse which may be reasonably anticipated. *Id.* It is not necessary that the specific manner of the accident be foreseen, merely that the negligent conduct of

the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm.[4]

■ Proximate causation, or the lack of it, is generally a question of fact to be decided by a jury. *Gronlie v. Positive Safety Manufacturing Company*, 50 Mich. App. 109, 212 N.W.2d 756, 759 (1973); *Davis v. Thornton*, 384 Mich. 138, 180 N.W.2d 11 (1970); *Comstock v. General Motors Corporation*, 358 Mich. 163, 99 N.W.2d 627 (1959). Therefore, unless it can be said as a matter of law that the modifications of the machine by the plaintiff's employer operated as a superseding cause breaking the chain of causation, the issue of proximate causation, under the facts of this case, should have been left to the jury.

■ In *Comstock v. General Motors Corporation* the Michigan Supreme Court addressed the issue of what constitutes a superseding cause and cited with approval the following rule provided in RESTATEMENT (SECOND) OF TORTS, § 447, p. 478:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct, is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, * * * * "

358 Mich. at 179, 99 N.W.2d at 635.

A key inquiry in resolving the question of superceding cause is foreseeability. There-

Court granted summary judgment for the defendant, and plaintiff appealed. The Court of Appeals of Michigan held that a genuine issue of fact existed as to whether manufacturers, who knew that continual maintenance was necessary, had a duty to provide safeguards against foreseeable unreasonable risks which could occur while maintenance was taking place, thus precluding summary judgment.

**4.** § 442B of RESTATEMENT (SECOND) OF TORTS states:

Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

fore, where a plaintiff is injured by a manufacturer's product, the intervening conduct of the plaintiff's employer does not insulate the manufacturer from liability unless the employer's acts or omissions are unforeseeable. Antecedent tortfeasors are not relieved of liability as the result of consequences which they should have anticipated under the circumstances. *Gracyalny v. Westinghouse Electric Corp.*, 723 F.2d 1311, 1323 (7th Cir.1983).

We conclude that the jury could properly have found that defendant was negligent in failing to guard the nip points, particularly since the provision of jog buttons could be deemed foreseeable. Such negligence could be found to be a proximate cause of plaintiff's injury. And because the modifications were foreseeable, they could be deemed not to be a superseding cause. The judgment *n.o.v.* was improperly granted.

In ordering judgment *n.o.v.*, the trial court said that in any event it would at least have ordered a new trial on the ground that the verdict was against the great weight of the evidence. In a diversity case, the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law. *Pitts v. Electro-Static Finishing, Inc.*, 607 F.2d 799 (8th Cir.1979); *Calloway v. Manion*, 572 F.2d 1033 (5th Cir.1978); *Vizzini v. Ford Motor Co.*, 569 F.2d 754 (3rd Cir.1977); *Oldenburg v. Clark*, 489 F.2d 839 (10th Cir.1974); *contra, Smith v. Kenosha Auto Transport*, 226 F.Supp. 771 (D.Montana, 1964). The federal rule is that the question of granting or denying of a motion for a new trial following a jury verdict addresses itself to the judicial discretion of the trial judge, and his decision will not be reversed in the absence of a showing of an abuse of discretion. *Pitts v. Electro-Static Finishing Inc., supra* at 803.[5]

In ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, a district judge may compare the opposing proofs and weigh the evidence and it is the duty of the judge to set aside the verdict and grant a new trial if he is of the opinion that the verdict is against the clear weight of the evidence. *Moran v. Johns-Manville Sales Corp.*, 691 F.2d 811 (6th Cir.1982); *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir.1982). However, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). "Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached." *Bruner v. Dunaway*, 684 F.2d at 425.

As we analyze the record, there was little conflict in the evidence, except, perhaps, for Mr. Josephs' categorical opinion that nip points must be guarded as opposed to Mr. Krauss' opinion that a guard is not practical on this machine. It seems clear that the jury's findings were really based on the inferences it chose to draw from relatively undisputed facts. In this context, it would be inappropriate for the district judge to order a new trial on the ground that the verdict was against the great weight of the evidence. *Tennant, supra.*

The judgment is reversed and the cause remanded with directions to reinstate the verdict and enter judgment thereon.

KRUPANSKY, Circuit Judge, dissenting.

Because the net effect of the majority's holding is the imposition of absolute and/or

---

5. In any event, we see no substantial difference between the federal standard and the Michigan standard. In Michigan the rule is that motions for new trials are addressed to the sound discretion of the trial court and are reviewed for abuse of discretion. *Cranson v. Eastman,* 28 Mich.App. 560, 184 N.W.2d 480 (1971); *Day v. Minor Walton Bean Company,* 22 Mich.App. 36, 176 N.W.2d 717 (1970).

vicarious liability on the defendant manufacturer in this case, I respectfully dissent.

Plaintiff herein pursued his claim on the alternative theories of negligence in the design of the roll form machine and breach of implied warranty. It is axiomatic that the initial step in establishing liability for negligent design of a product requires definition of the "duty" imposed by law on the manufacturer. *See, e.g., Abel v. Eli Lilley and Co.*, 94 Mich.App. 59, 70, 289 N.W.2d 20 (1979), *modified and aff'd*, 418 Mich. 311, 343 N.W.2d 164 (1984) (under negligence theory, plaintiff must establish the traditional common-law elements of duty, breach, damage and causation). To prevail on the implied warranty claim, the plaintiff must prove that a defect in the product, attributable to the manufacturer, *caused* his injury. *Id.* (emphasis added). In the instant case, the facts simply do not support recovery for the plaintiff on either theory.

The duty which Michigan law imposes upon a manufacturer is "to design products that are safe for their intended or reasonably contemplated use, guarding against all *unreasonable, foreseeable* risks to users." *Gootee v. Colt Industries, Inc.*, 712 F.2d 1057, 1064 (6th Cir.1983) (emphasis added). *See also, Hartford Fire Ins. v. Walter Kidde & Co.*, 120 Mich.App. 283, 328 N.W.2d 29, 33 (1982). As the majority correctly observes, "a manufacturer has a duty to produce a *reasonably* fit product ...," at 1193 (emphasis added), *citing Hartford Fire, supra; Elsasser v. American Motors Corp.*, 81 Mich.App. 379, 265 N.W.2d 339 (1978).

In the instant case, the majority acknowledges that the plaintiff's injury could not have resulted from plaintiff's operation of the machine as originally designed.[1] In making this concession, the majority concedes that, as originally manufactured, the roll former was reasonably safe for use in the manner in which the employee was operating it. Stated differently, the danger presented by the machine was clearly *not* a result of defective design, but rather a result of the negligence of plaintiff's employer in making major modifications to the machine without regard for the hazardous consequences to employees. Thus, the majority vicariously imposed the employer's negligence on the defendant in this case, an approach which has been expressly rejected in this circuit. *Adams v. Union Carbide*, 737 F.2d 1453 at 1457 (6th Cir. 1984).

The proof adduced at trial regarding the safety devices which the defendant *could* have added in 1957 to guard against the injuries complained of herein are, to my perspective, irrelevant. *See, e.g., Gootee, supra*, 712 F.2d at 1064 (feasibility of a design change, standing alone, does not establish negligence on the part of the manufacturer). The necessity for adding these safety devices was reasonably foreseeable by the defendant manufacturer in 1957 only *if* the modifications eventually made by plaintiff's employer were equally foreseeable. In other words, the majority is ruling that not only should the manufacturer have foreseen the need for safety devices, but rather that it should have anticipated every conceivable modification which would or could have been made by the plaintiff's employer (or other purchasers of the machine) into perpetuity from the date of the machine's delivery to the employer.[2] The majority then imposes a duty on the manufacturer to counter any hazards resulting from the anticipated modifications to the machine by installing additional safeguards. Carried to its logical extreme, the majority's opinion places an absolute duty on a manufacturer not only to produce a machine reasonably safe as delivered, but also to employ clairvoy-

---

**1.** The majority concedes that "it seems clear enough that if the jog buttons had not been added anyone performing the task being performed by plaintiff would have shut off the power or the motor or disengaged the clutch before putting his hands in proximity to the rolls. The rolls could not then have started to turn unless some other person intervened." At 1195.

**2.** In this case 20 years had elapsed from the date of initial delivery.

ance to determine how the machine might be modified in perpetuity, and to further protect against hazards resulting therefrom. Such a requirement effectively imposes absolute liability on the manufacturer in this case.

In sum, I would hold that as a matter of law, the modifications made by Modern Materials were not reasonably foreseeable by the defendant, and further, that the modifications, not the original design of the machine, were the proximate cause of plaintiff's injuries. Thus, plaintiff was not entitled to recovery on either a negligence or implied warranty theory, and the trial court's grant of defendant's jnov motion should be affirmed.