770 F.2d 165
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MADISON ANDERSON, PLAINTIFF-APPELLANT,
v.
WALTER SHEPPARD, DEFENDANT,
FORD MOTOR COMPANY, DEFENDANT-APPELLEE.
 NO. 84-1462
 United States Court of Appeals, Sixth Circuit.
 7/31/85
 
 E.D.Mich.
 REVERSED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: MARTIN, CONTIE, and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Medison Anderson appeals from an order of a directed verdict entered against him at the close of all the evidence in his 42 U.S.C. Sec. 1981 race discrimination suit against the Ford Motor Company. Anderson argued that his discharge from the position of Waste Treatment Operator at Ford in September 1981 was in retaliation for his filing a race discrimination complaint against Ford with the Equal Employment Opportunity Commission in 1976. At the close of Ford's proofs, the district court found for Ford on Anderson's 42 U.S.C. Sec. 2000e claim and directed a verdict for Ford on the 42 U.S.C. Sec. 1981 claim. Anderson appealed the directed verdict.[1]
 
 
 2
 Madison, who is a black male, applied for the position of Waste Treatment Operator in 1975. In 1976 he filed a complaint with the EEOC claiming that his failure to obtain the position was a result of race discrimination. He also filed a grievance with his union, and pursuant to a grievance settlement he was placed first on the seniority list for the positions at the Waste Treatment Plant.
 
 
 3
 In 1979 Ford enlarged the Waste Treatment Plant and decided to increase the number of operators from seven to ten. Anderson was hired for one of the new positions. Subsequently, however, Ford determined that its initial assessment of the number of persons needed to operate the enlarged plant was erroneous. Accordingly, Ford reduced the number of operators from ten to seven. One white operator was laid off in 1979, another white operator was laid off in 1980, and then Anderson was laid off.
 
 
 4
 Between December 1980 and June 1981 Anderson, Ford, and the EEOC worked toward resolving Anderson's still-pending 1976 complaint. In June 1981 Anderson and Ford entered into a conciliation agreement that provided in part:
 
 
 5
 In exchange for the promises of Madison Anderson and the Equal Employment Opportunity Commission contained in paragraph (1) of this Agreement, the Ford Motor Company agrees to pay $1,500 to Madison Anderson. It is understood that the above amount is subject to appropriate federal, state and local withholding taxes and FICA. Further, based upon its determination of current work force requirements, Ford Motor will recall Madison Anderson, in accordance with his seniority, within 30 days from the date of this agreement, to the classification of Industrial Waste Treatment Operator and Minor Maintenance. Thereafter, Mr. Anderson's employment shall continue to be governed by applicable work force requirements and the terms of the Ford-UAW Collective Bargaining Agreement.
 
 
 6
 Anderson was rehired as a Waste Treatment Operator pursuant to the concilation agreement but was laid off again in September 1981. Anderson then brought this action claiming that the September 1981 lay-off and Ford's failure subsequently to recall him were in retaliation for his filing the 1976 EEOC complaint.
 
 
 7
 Anderson sought to prove the retaliatory motive of Ford through the testimony of Ron Jaworski, a Waste Treatment Operator. Jaworski stated that when Anderson was laid off in September 1981 Ford increased the overtime worked by the other operators. He also testified that in his opinion there was enough work to create another position for a Waste Treatment Operator. Finally, he testified that there are no black operators at the Waste Treatment Plant. Based in large part on Jaworski's testimony, the district court denied Ford's motion for a directed verdict at the close of Anderson's case because Anderson had established that he was black and had been laid off and because the record contained some evidence that another operator was needed at the plant.
 
 
 8
 Ford then presented evidence tending to show that its actions were not retaliatory. Ford supervisors testified that, except for the brief period in the Summer of 1981 when they recalled Anderson, from 1980 until the present the Waste Treatment Plant has been operated by seven operators. They testified that any additional workforce needs can be met on a temporary basis by authorizing overtime work. Moreover, Ford supervisors and Don Swilley, the EEOC representative who negotiated the parties' conciliation agreement, testified that Ford and Anderson knew that the conciliation agreement entitled Anderson to be recalled only for the Summer of 1981, when Ford could use him to do some seasonal work at the plant. When the seasonal work was finished in September 1981, Anderson was laid off again.
 
 
 9
 The standard for determining a motion for directed verdict is the same as that for determining a motion for judgment notwithstanding the verdict. That standard was set out in Toth v. Yoder Co., 749 F.2d 1190 (6th Cir. 1984):
 
 
 10
 The issue raised by a motion for a judgment n.o.v. is whether there is sufficient evidence to raise a question of fact for the jury. This determination is one of law to be made by the trial court in the first instance. In determining whether the evidence is sufficient, the trial court may not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. Morelock v. NCR Corp., 586 F.2d 1096, 1104-1105 (6th Cir. 1978). If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted. Id. An appellate court, when reviewing the trial court's decision, is bound by the same standard. Morelock v. NCR Corp., supra, 586 F.2d at 1105; Gillham v. Admiral Corp., 523 F.2d [102, 109 (6th Cir. 1975)].
 
 
 11
 Toth, 749 F.2d at 1194. With this standard in mind, we conclude that the district court erred in directing a verdict on the section 1981 claim. First, however, we must resolve two evidentiary questions.
 
 
 12
 First, Anderson argues that Swilley's testimony violated the parol evidence rule. This is a red herring; the parol evidence rule is irrelevant to this case. Swilley's testimony was not introduced to vary the terms of the conciliation agreement. This is not a breach of contract action. The testimony was introduced to show Ford's assessment of its manpower needs and its action--limiting Anderson's employment to its seasonal requirements--consistent with those needs. This was classic 'state of mind' evidence that tended to negate any inference of retaliatory intent.
 
 
 13
 Second, Anderson argues that the district court erred in refusing to admit evidence of four adverse job actions taken against Anderson while he worked in positions other than Waste Treatment Plant Operator. Anderson's counsel admitted at trial, however, that there was no evidence that the supervisors responsible for these job actions were aware that Anderson had ever filed a complaint with the EEOC. The district court therefore correctly ruled that the proferred evidence was not relevant because it could not tend to establish the existence of a retaliatory intent.
 
 
 14
 After resolving these evidentiary questions adversely to Anderson, we cannot conclude that a directed verdict was proper. Although Ford supervisors testified that only seven workers were required to operate the plant, Jaworski testified that there was enough work to justify hiring another operator. From Jaworski's testimony the jury could infer that Ford refused to create a new position in order to prevent Anderson from getting the job. The same inference could be made from Ford's use of pipefitters and millwrights to work at the plant on a temporary basis. Although Swilley testified that both Ford and Anderson knew that Anderson's employment pursuant to the settlement agreement was to terminate at the end of the Summer of 1981, Anderson flatly denied that Swilley had conveyed that information to him. From Anderson's testimony the jury could infer that if Swilley had not conveyed that information to Anderson he also had not conveyed it to Ford.
 
 
 15
 The district court attempted to avoid the significance of these disputed factual issues by labelling them 'credibility determinations' and resolving them against Anderson. That might have been appropriate with respect to resolution of the Title VII claim, but Toth states specifically that on a motion for directed verdict the court may not 'weigh the evidence [or] pass on the credibility of witnesses . . ..' 749 F.2d at 1194. This case should have gone to the jury.
 
 
 16
 The judgment of the district court is reversed.
 
 
 
 [1]
 Anderson's Notice of Appeal stated that he appealed from 'the Directed Verdict entered in favor of the Defendant entered on June 15, 1984 . . ..' No issued related to the Title VII claim are before us