Robert RIDGWAY, Plaintiff–Appellee,

v.

**FORD DEALER COMPUTER
SERVICES, INC., Defendant–
Appellant.**

No. 96–1271.

United States Court of Appeals,
Sixth Circuit.

Argued April 28, 1997.

Decided May 28, 1997.

**ARGUED:** F. Mark Hugger, Ann Arbor, MI, for Appellee. John C. Allen, Houston, TX, for Appellant. **ON BRIEF:** F. Mark Hugger, Ann Arbor, MI, for Appellee. John C. Allen, Houston, TX, for Appellant.

Before: GUY, MOORE, and COLE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

In this action for wrongful termination, Defendant–Appellant Ford Dealer Computer Services, Inc. ("FDCS") appeals from the judgment entered against it in favor of Plaintiff–Appellee Robert Ridgway following a jury verdict in Ridgway's favor. We affirm.

## I. BACKGROUND

Robert Ridgway began working for Ford Motor Company in 1970. After holding a variety of positions at Ford, he became involved in the Dealer Computer Services division ("DCS"). In January 1992, Ford sold DCS to Ford Dealer Computer Services, which just had been incorporated. The sales agreement contained a provision that FDCS would provide a severance benefit to DCS employees terminated without cause within one year of the sale. Four months after the sale was consummated, FDCS fired Ridgway. When FDCS failed to pay Ridgway the severance package provided for in the agreement it entered into with Ford, Ridgway filed suit against Ford Motor Company and FDCS in Michigan state court, alleging four state-law causes of action. The defendants then removed the action to federal district court. Shortly after removal, Ridgway settled with Ford, leaving FDCS as the only remaining defendant.[1]

Prior to trial, FDCS moved for summary judgment on the ground that Ridgway was neither a party nor a third-party beneficiary

1. Ford Motor Company and FDCS removed this action on the ground that federal question jurisdiction exists based on ERISA preemption. Because Ford has its principal place of business in Michigan and Ridgway is a Michigan citizen, removal based on diversity jurisdiction would have been improper. There is no dispute, however, that had Ford been dismissed before removal, this action could have been removed based on diversity jurisdiction. Even assuming, arguendo, that removal on the basis of federal question jurisdiction was improper, the district court properly exercised subject matter jurisdiction over this dispute. *See Safeco Ins. Co. v. City of White House*, 36 F.3d 540, 545 (6th Cir.1994) (stating that once the party causing the jurisdictional defect is dismissed, the action can continue in federal court).

to its contract with Ford. Ridgway then voluntarily dismissed all his claims except for a single breach-of-contract claim against FDCS. The district court denied FDCS's motion for summary judgment, concluding that Ridgway was a third-party beneficiary to the contract between FDCS and Ford. The primary issue remaining for trial, then, was whether FDCS had cause to terminate Ridgway. The jury answered this question in the negative and awarded severance benefits to Ridgway. FDCS then filed this timely appeal, contending that the district court erred in concluding that Ridgway was a third-party beneficiary, that the court erroneously instructed the jury on the burden of proof, and that the court erred by not granting either FDCS's motion for judgment as a matter of law or its motion for a new trial.

## II. THIRD-PARTY BENEFICIARY STATUS

■ FDCS contends that Ridgway did not plead a third-party beneficiary theory in his complaint and that even if such a theory were pleaded, the district court erred in determining that Ridgway was a third-party beneficiary of the contract between FDCS and Ford. Ridgway's complaint provides:

Defendants Ford and UCS[2] entered into a contractual relationship with Plaintiff which promised Plaintiff that during the first year following the transfer of DCS from Ford to UCS, his employment would not be terminated except for cause or in the alternative that should Plaintiff's employment be terminated during the first year absent just cause, Plaintiff would be compensated at his base salary for one year.

J.A. at 47–48 (Compl.¶ 37). Although this claim is not artfully worded, it adequately sets forth the third-party beneficiary theory and provided notice to FDCS of the nature of the claim. See Conley v. Gibson, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957) (stating that under the liberal pleading requirements in the Federal Rules of Civil Procedure, the complaint must simply "adequately set forth a claim and [give the defendant] fair notice of its basis").

■ We likewise reject FDCS's argument that Ridgway was not a third-party beneficiary of the contract between FDCS and Ford. Michigan's third-party beneficiary statute provides in relevant part:

Sec. 1405. Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

M.C.L. § 600.1405. To determine the claiming party's status, an objective test that focuses on the contract itself is used. Paul v. Bogle, 193 Mich.App. 479, 484 N.W.2d 728, 735 (1992). "Where the contract is intended to primarily benefit its signatories, the mere fact that a third person would be incidentally benefitted does not entitle that person to its protection." Id.

FDCS contends that the contract provision at issue in this case primarily was intended to benefit Ford and FDCS and that any benefit flowing to Ridgway was only incidental. This argument fails in light of the plain language of the contract. The relevant section of the sales agreement provides: "In the event that within one year of the Closing Date (i) a DCS Regular Employee employed by FDCS is involuntarily terminated from employment with FDCS ... FDCS shall provide to such DCS Employee a severance benefit. ..." J.A. at 188. Ridgway correctly notes that the primary—if not the sole—purpose of this promise is to benefit the Ford DCS employees involuntarily transferred to FDCS. And while the primary purpose of the sales agreement as a whole may not have been to benefit Ford DCS employees, the relevant question is whether the "promise

---

**2.** FDCS is a wholly owned subsidiary of Universal Computer Consulting Holding, Inc. ("UCS"). Ridgway initially believed that the relevant contract was between UCS and Ford. Subsequent filings by the parties, however, make clear that both sides agreed that the relevant contract was between Ford and FDCS.

... [was] made for the benefit of a person." M.C.L. § 600.1405 (emphasis added). In this case, it undoubtedly was.

### III. BURDEN OF PROOF

 FDCS contends that the district court erred by instructing the jury that FDCS had the burden to prove that Ridgway was not terminated for cause. It is well established in Michigan that in wrongful discharge cases based upon an employment contract, after the plaintiff proves the existence of a contract and his performance under the contract until the time of discharge, the burden shifts to the defendant to prove that there was "just cause" for the termination. *See Turner v. Allstate Ins. Co.*, 902 F.2d 1208, 1210–11 (6th Cir.1990) (citing numerous Michigan cases). FDCS argues that this rule does not apply to the present dispute because it is undisputed that Ridgway was an employee at-will. Thus, appellant would have us recognize a difference for burden-of-proof purposes between cases dealing with contracts that promise not to terminate an employee except for just cause and cases dealing with contracts that promise not to deny a certain class of benefits to a former employee except for when that employee was terminated for just cause. FDCS has offered no reason why this difference is important, and we can find none. We thus conclude that the district court correctly placed the burden of proving just cause on FDCS.

### IV. MOTION FOR JUDGMENT AS A MATTER OF LAW

 After Ridgway rested his case, FDCS moved for judgment as a matter of law. The district court deferred ruling on the motion until after the close of the trial and then ultimately denied it. In reviewing a district court's ruling on a motion for judgment as a matter of law, "this circuit has long held that the state law standard controls in a diversity case." *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 726 (6th Cir. 1994).[3] Under Michigan law, a judgment as a matter of law "may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Toth v. Yoder Co.*, 749 F.2d 1190, 1194 (6th Cir.1984) (citing cases).

 Appellant contends that the district court should have granted his motion for judgment as a matter of law because Ridgway failed to introduce the relevant contract into evidence during his case-in-chief. FDCS points to a Michigan Court of Appeals decision that provides: "When an action is based on a written contract, it is necessary to plead and produce the contract." *Burrill v. Michigan*, 90 Mich.App. 408, 282 N.W.2d 337, 339 (1979) (citing Michigan GCR § 113.4 (1963)). In essence, FDCS interprets *Burrill* as creating an additional element in contract claims based upon written contracts. *Burrill*, however, does nothing more than paraphrase a Michigan Court Rule governing pleadings filed in Michigan court. The pleading rule cited in *Burrill* provides in pertinent part: "Whenever a claim or defense is founded upon a written instrument ..., a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an

---

3. Nearly all of our sister circuits have abandoned this dubious rule. *See* 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2525, at 272–73 (2d ed.1994) (citing cases). We have, in the past, questioned its continued validity. *See Toth v. Yoder Co.*, 749 F.2d 1190, 1194 n. 2 (6th Cir.1984). Nonetheless, we have continued to apply it. Because we have federal standards for Rule 12(b)(6) dismissals and summary judgment rulings, it makes little sense to turn to state law for other similar rulings, especially when there is a Federal Rule of Civil Procedure directly on point. *See* WRIGHT & MILLER, *supra*, § 2525, at 271 ("In the occasional case in which there is a measurable difference between the state and federal rules on the sufficiency of the evidence to create a jury issue, principle seems to require that the federal court apply the

federal test."). In this case, the federal standard and Michigan standard for the quantum of evidence required to overcome a motion for judgment as a matter of law are nearly identical, and application of one standard over the other is of little practical consequence. *Toth*, 749 F.2d at 1194 n. 2. Even so, we should be applying the correct rule, not an incorrect rule that nevertheless produces the correct result. We recognize, of course, that one panel of this circuit cannot overrule a published decision issued by another panel. *See e.g., United States v. Jones*, 107 F.3d 1147, 1151–52 (6th Cir.1997). Thus, absent en banc review by this circuit or intervening Supreme Court precedent, state law will continue to govern the standard for judgment as a matter of law in diversity cases in this circuit.

exhibit...." *Stocker v. Clark Ref. Corp.*, 41 Mich.App. 161, 199 N.W.2d 862, 864–65 (1972) (quoting Michigan GCR § 113.4 (1963)).[4] Because there is no indication that the rule cited in *Burrill* is anything more than a pleading requirement, and FDCS does not contend that Ridgway's complaint violated this requirement or that the district court in this case should have followed Michigan's pleading rules[5], FDCS's reliance on *Burrill* is misplaced.

Nonetheless, FDCS is correct that in the typical contract case based upon a written contract, the plaintiff must introduce the contract itself into evidence. Under the "best evidence" rule, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." FED.R.EVID. 1002. In this case, it is undisputed that only oral evidence regarding the contract and a summary of the relevant contract provision were admitted into evidence during Ridgway's case in-chief. The summary was contained in a letter sent to all DCS employees informing them of the imminent agreement between Ford and FDCS and of the various benefits the employees would continue to receive after they began their employment with FDCS. J.A. at 409. Had FDCS objected to the admissibility of this evidence on the basis that it was not the best evidence of the contract, the objection would have been well-grounded; Ridgway then could have responded by introducing the contract itself into evidence. No objection was raised, however. In this situation, FDCS waived its

otherwise valid argument that the contract itself should have been introduced. *See United States v. Shriver*, 842 F.2d 968, 975–76 n. 10 (7th Cir.1988) (stating that, because the defendant did not object to the witness's oral testimony regarding the terms of the security agreement, "the government was not put to this task [of either producing the security agreement or satisfying one of the exceptions to the best evidence rule,] and the best evidence issue was waived."); 6 JOSEPH M. MCLAUGHLIN ET AL., WEINSTEIN'S FEDERAL EVIDENCE ¶ 1002.04[5](a), at 1002–13 (2d ed. 1997) ("[A]n appellant's failure to properly raise an objection to the best evidence rule at trial will result in waiver of the error on appeal."). Because relevant evidence regarding the terms of the contract was introduced into evidence without objection, FDCS's motion for judgment as a matter of law was properly denied.

## V. MOTION FOR A NEW TRIAL

 FDCS contends that the district court abused its discretion in denying FDCS's motion for a new trial because there was insufficient evidence to support the jury verdict. In diversity cases, we apply federal law in reviewing a denial of a motion for a new trial, "[a]nd, in reviewing a trial court's denial of a new trial motion on the ground that the verdict is against the clear weight of the evidence, we accept the jury's verdict if it was reasonably reached." *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir.1996).[6] FDCS argues that there was overwhelming evidence that Ridgway had a bad attitude and that he did a poor job of maintaining inventory at Budco, a vendor of Ford Motor

---

**4.** The pleading rule cited in *Burrill* and *Stocker*, although subsequently renumbered, remains a part of Michigan law. *See* MCR § 2.113(F) (1985).

**5.** Of course, an argument that the federal district court should have followed Michigan's pleading requirements would have been meritless. *See, e.g., Federal Deposit Ins. Corp. v. Dawson*, 4 F.3d 1303, 1308 (5th Cir.1993) ("[T]he pleading requirements in federal court are governed by Federal Rule of Civil Procedure 8 rather than by state law."), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1204, at 82 (2d ed. 1990) ("[I]t no longer can be doubted that the rules regarding the standard of specificity to be applied to

federal pleading, the pleadings allowed in the federal courts, the form of the pleadings, [and] the special requirements for pleading certain matters ... all are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.").

**6.** It seems incongruous that this circuit looks to state law to determine the sufficiency of the evidence required to reach a jury, but to federal law to determine the sufficiency of the evidence required to support a jury verdict. Clearly, in light of note 3, *supra*, this panel agrees with the application of a federal standard in evaluating new trial motions based upon the sufficiency of the evidence, consistent with *Anchor* and other Sixth Circuit precedents.

Company that housed many of the materials from Ridgway's division. Although evidence was introduced supporting FDCS's position, it was not overwhelming.

Ridgway testified that prior to 1991 he had never received a negative review. J.A. at 250. His problems apparently began in August 1991 when Robert Maki became his supervisor. Maki testified that Ridgway had a bad attitude and that his performance was poor. J.A. at 246–47. Ridgway testified, however, that he wrote two separate letters to Maki specifically inquiring as to how Maki wanted Ridgway's division to do certain tasks but that Maki never responded. J.A. at 267–69. He further testified that Maki showed little interest in Ridgway or any of the employees in Ridgway's division. J.A. at 257. Karen Shimp, who worked in Ridgway's division, testified that Ridgway had a negative attitude about his work, J.A. at 330, but that his negative attitude was directly related to Maki. J.A. at 344. She also testified that after Ridgway was given a letter outlining his unsatisfactory performance on March 18, 1992, he engaged in none of the activities that troubled Maki. J.A. at 345. Shimp added that Ridgway had a good working relationship with his group, J.A. at 303, and that his inventory work at Budco was better than that of the other individuals in charge of inventory there, J.A. at 316. In short, the record contains evidence that Ridgway had no trouble at work before Maki became his boss and conflicting evidence as to the cause of his troubles afterwards. Although plenty of evidence was introduced suggesting that FDCS had cause to terminate Ridgway, there certainly was sufficient evidence for the jury to conclude either that cause did not exist or that FDCS fired Ridgway for some reason other than cause. We conclude that because the jury's verdict was reasonably reached, the district court did not abuse its discretion by denying FDCS's motion for a new trial.

## VI. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.