HARTFORD FIRE INSURANCE COMPANY v WALTER KIDDE &
COMPANY, INC

Docket No. 57276. Submitted May 17, 1982, at Detroit.—Decided
October 7, 1982.

Plaintiff Red Run Golf Club (Red Run) brought an action in the
Oakland Circuit Court, Gene Schnelz, J., to recover fire dam-
ages not covered by its insurance, following a fire in its reno-
vated kitchen during which an automatic fire extinguishing
system did not operate. Plaintiff Hartford Fire Insurance Com-
pany joined the action to recover monies paid to Red Run. The
defendants in the action were Stainless Equipment Manufac-
turing Co. (Stainless) which was hired by Red Run to do the
construction on the renovation of Red Run's kitchen, Detroit
Fire Extinguisher Company, Inc. (Detroit), which was subcon-
tracted by Stainless to lay out and install the automatic fire
extinguishing system, which also had a manual pull in the
kitchen, Walter Kidde & Company, Inc. (Kidde), the manufac-
turer of the fire extinguishing system, and Wake-Pratt Con-
struction Co. (Wake-Pratt). Mediation was undertaken prior to
the trial and resulted in a recommendation of no cause of
action as to defendants Kidde and Wake-Pratt. The plaintiffs
did not file a written acceptance of the recommendation as to
either Kidde or Wake-Pratt. The action, thereafter proceeded to

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 884.
  31 Am Jur 2d, Expert and Opinion Evidence § 26.
[2] 29 Am Jur 2d, Evidence §§ 823, 824.
[3] 75 Am Jur 2d, Trial § 537.
[4] 57 Am Jur 2d, Negligence § 7.
[5] 63 Am Jur 2d, Products Liability §§ 3, 25, 26.
[6, 7] 63 Am Jur 2d, Products Liability §§ 62, 63, 68.
  Products liability: modern cases determining whether product is
    defectively designed. 96 ALR3d 22.
[7] 63 Am Jur 2d, Products Liability §§ 71, 72.
[8] 63 Am Jur 2d, Products Liability § 79.
[9] 63 Am Jur 2d, Products Liability §§ 94, 112.
[10] 41 Am Jur 2d, Independent Contractors § 24.
[11] 5 Am Jur 2d, Arbitration and Award § 139.

trial wherein an order of dismissal was entered as to Wake-Pratt. After the plaintiffs rested their case the trial court directed verdicts in favor of each of the defendants and awarded defendant Kidde actual attorney fees. Plaintiffs appeal alleging that the trial court erred: (1) in entering the directed verdicts, (2) in refusing to allow the plaintiffs' expert witness to offer certain testimony, and (3) in awarding Kidde actual attorney fees. *Held:*

1. The trial court's decision to exclude testimony from the plaintiffs' expert witness because his theory and proffered opinion were not based on any test procedures which simulated the type of fire at issue and thus the prejudicial effect of his testimony outweighed its probative value was not a clear abuse of discretion.

2. The directed verdict in favor of defendant Detroit was erroneous since a jury could have found that defendant Detroit was negligent in positioning the fusible links and was negligent by failing to place the manual pull on an exit path as required.

3. The directed verdict in favor of defendant Kidde on plaintiff's claim of negligent design was erroneous since a jury could have concluded that more than one manual pull location was required in the kitchen or that the fusible links should have been designed to have been placed in a different location.

4. There was no evidence that defendant Stainless made an express warranty regarding the system manufactured by Kidde, which was specifically requested by plaintiff Red Run, therefore, the directed verdict for defendant Stainless on this theory was proper.

5. Since plaintiff Red Run requested defendant Stainless to provide a known, defined good which was subsequently furnished, a directed verdict in favor of defendant Stainless on the claim of implied warranty was proper.

6. There was no evidence presented to show that defendant Detroit was an employee subject to defendant Stainless's control, therefore, the directed verdict in favor of defendant Stainless on the claim of vicarious liability was proper.

7. Since the plaintiffs' failure to file a written rejection of the mediator's recommendation of no cause of action regarding defendant Kidde constituted a rejection of such recommendation the trial court did not err by awarding actual attorney fees to defendant Kidde after it obtained a directed verdict at trial. However, since the directed verdict was erroneous, the award of actual attorney fees is reversed until this case is ultimately decided.

The judgments for defendants Detroit Fire Extinguisher Com-

pany, Inc., and Walter Kidde & Company, Inc., are reversed and the cause remanded and the judgment for defendant Stainless Equipment Manufacturing Co. is affirmed.

1. WITNESSES — EXPERT WITNESSES.

The determination of whether an expert witness is qualified to testify rests within the sound discretion of the trial court whose determination will not be reversed on appeal absent an abuse of discretion.

2. EVIDENCE — TESTS — EXPERIMENTS.

The admission or exclusion of test results and experiments rests within the trial court's discretion, however, before such test results can be admitted, a proper foundation must be laid to show that the test in question properly duplicated the actual conditions giving rise to the lawsuit; a test must recreate the original conditions of the occurrence before it has any probative value.

3. TRIAL — DIRECTED VERDICT — EVIDENCE — PRIMA FACIE CASE.

A motion for a directed verdict must be denied where the trial court, viewing the evidence and all legitimate inferences which may be drawn therefrom in the light most favorable to the nonmoving party, finds that the evidence establishes a prima facie case.

4. TRIAL — DIRECTED VERDICT — NEGLIGENCE ACTIONS.

Directed verdicts in negligence actions are viewed with disfavor since the determination of liability greatly depends upon the resolution of conflicting factual matters.

5. PRODUCTS LIABILITY — THEORIES OF RECOVERY — NEGLIGENCE — IMPLIED WARRANTY.

Michigan recognizes two theories of recovery in products liability actions: that of negligence and that of implied warranty; under the negligence theory, the plaintiff must establish the traditional common-law elements of duty, breach, damage, and causation; to establish breach of implied warranty, the plaintiff must show that a defect in the product, attributable to the manufacturer, caused his injuries.

6. PRODUCTS LIABILITY — MANUFACTURER'S LIABILITY — NEGLIGENT DESIGN.

The test for a manufacturer's liability with respect to negligent design of a product is whether the manufacturer has failed to protect against a risk that is unreasonable and foreseeable by the manufacturer.

7. PRODUCTS LIABILITY — NEGLIGENT DESIGN — IMPLIED WARRANTY. MTHN

Negligent design falls under both a negligence theory and an implied warranty theory of liability because a manufacturer has a duty to produce a reasonably fit product under either concept.

8. PRODUCTS LIABILITY — INDUSTRY OR GOVERNMENTAL STANDARDS.

Compliance with industry or governmental standards is merely relevant, not conclusive, evidence of reasonably prudent conduct which the factfinder may consider in its determination of negligence in a products liability case.

9. PRODUCTS LIABILITY — IMPLIED WARRANTY OF FITNESS — KNOWN DEFINED GOODS.

An implied warranty of fitness does not exist even though the seller is the manufacturer and the buyer disclosed to him the purpose for which the article was purchased where a known, described, and defined article is agreed upon, and that known, described, or defined article is furnished.

10. NEGLIGENCE — INDEPENDENT CONTRACTORS.

One who employs an independent contractor is generally not vicariously liable for the latter's negligence.

11. JUDGMENTS — MEDIATION — REJECTION OF RECOMMENDATION — COURT RULES.

A plaintiff must obtain a verdict which is ten percent greater than the mediation evaluation or pay actual costs to the defendant where the plaintiff rejects a mediator's recommendation and the case proceeds to trial; the failure to file a written acceptance of the mediator's recommendation within 20 days after the mediation panel's evaluation is mailed to the parties constitutes a rejection (GCR 1963, 316.6[h][1], 316.7[b][1]).

*Denenberg, Tuffley, Thorpe, Bocan & Patrick* (by *Edward X. Tuttle),* for plaintiffs.

*Collins, Einhorn & Farrell, P.C.* (by *Brian Einhorn* and *Noreen L. Slank),* for Walter Kidde & Company, Inc.

*Ulanoff, Ross, Summer, LaKritz, Wesley & Bloom, P.C.* (by *Stuart A. Ulanoff),* for Detroit Fire Extinguisher Company, Inc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Stanley A. Prokop*) for Stainless Equipment Manufacturing Co.

Before: M. F. CAVANAGH, P.J., and N. J. KAUF-MAN and R. A. BENSON,* JJ.

PER CURIAM. Plaintiff Red Run Golf Club (hereinafter Red Run) brought this action to recover for fire damages not covered by its insurance; plaintiff Hartford Fire Insurance Company joined the action to recover monies paid to plaintiff Red Run. The trial court directed verdicts in favor of each of the defendants and awarded defendant Walter Kidde & Company, Inc. (hereinafter Kidde), actual attorney fees. Plaintiffs appeal as of right.

In 1974, plaintiff Red Run hired defendant Stainless Equipment Manufacturing Co. (hereinafter Stainless) to do the construction on the renovation of the plaintiff's kitchen. Defendant Stainless did some of the work itself and subcontracted other portions. Defendant Detroit Fire Extinguisher Company, Inc. (hereinafter Detroit), was subcontracted to lay out and install an automatic fire extinguishing system, which also had a manual control, in the kitchen. Defendant Detroit bought this system from defendant Kidde, pursuant to plaintiff Red Run's instructions.

In 1977, a fire occurred in one of the broilers in plaintiff Red Run's kitchen. The automatic fire extinguishing system, which was supposed to activate when heat-sensing devices, known as fusible links, melt and release a dry chemical substance to smother the fire, did not operate, and plaintiff's employees did not activate the manual control. At trial, it was necessary to determine whether the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

system's fusible links and manual pull were properly located. This entailed a consideration of both the system's design, for which defendant Kidde was responsible, and the system's installation, for which defendant Detroit was responsible. Plaintiffs alleged theories of negligence, products liability, and breach of warranty.

On appeal, the plaintiffs first argue that the trial court erred by refusing to allow the plaintiffs' expert witness to testify regarding the placement of the fusible links. We begin by noting that it is well settled that the determination of whether an expert witness is qualified to testify rests within the sound discretion of the trial court; this Court will not reverse the determination of a witness's status unless there has been an abuse of that discretion. *People v Potter,* 115 Mich App 125; 320 NW2d 313 (1982); *People v Kearney,* 72 Mich App 28, 33; 248 NW2d 687 (1976), *lv den* 399 Mich 844 (1977). Furthermore, the admissibility of test results and experiments performed by experts and nonexperts is also a matter within the wide discretion of the trial judge, and before such test results can be admitted, a proper foundation must be laid to show that the test in question properly duplicated the actual conditions giving rise to the lawsuit. *Vanderberg v General Motors Corp,* 96 Mich App 683, 688; 293 NW2d 676 (1980). Thus, a test, to have any probative value whatever, must recreate the original conditions of the occurrence. *Elliott v A J Smith Contracting Co, Inc,* 358 Mich 398, 417; 100 NW2d 257 (1960).

Here, the testimony of the plaintiffs' alleged expert was offered to prove that the placement of the fusible links in the automatic fire extinguishing system was improper. His conclusion was based on a series of temperature measurement

tests he had taken under a commercial kitchen hood during a series of controlled fires; only five tests were taken on the type of broiler used in plaintiff Red Run's kitchen. The witness had never tested fusible links under actual or comparable conditions in any of his experiments. The trial court expressed its concern over the fact that the witness's proffered opinion and conclusion were based upon pure theory rather than actual application and testing of that theory. Since the witness's theory was that the temperature above the broiler under the hood would not reach the level necessary to melt the fusible links due to their location, the trial court inquired of the witness whether he would be able to predict with any reasonable degree of certainty what the heat would have been on top of the broiler based upon the description of the fire given by previous witnesses. Plaintiffs' witness responded that he could not, that the fire as described was most unusual, and that none of his testing involved a similar phenomenon. After lengthy questioning and argument, the trial court ruled that the plaintiffs' witness could not be qualified as an expert in relation to the triggering of the fusible links because his theory and proffered opinion were not based on any test procedures which simulated the type of fire at issue and thus the prejudicial effect of his testimony outweighed its probative value as far as the jury was concerned. Under these circumstances, we cannot say that the trial court's decision to exclude testimony from the plaintiffs' expert witness regarding the placement of the fusible links was a clear abuse of discretion.

Plaintiffs next argue that the trial court erred by granting directed verdicts in favor of each of the defendants. On appeal, the plaintiffs argue

that the directed verdicts were improper because: (1) defendant Detroit negligently installed the manual pull and the fusible links in the automatic fire extinguishing system; (2) defendant Kidde defectively designed the system; and (3) defendant Stainless breached certain warranties and is vicariously liable for defendant Detroit's negligence.

The standard of review of a motion for directed verdict is well settled. As this Court stated in *Hayes v General Motors Corp,* 106 Mich App 188, 192; 308 NW2d 452 (1981):

"A trial court in considering a motion for directed verdict must view the testimony and all legitimate inferences in a light most favorable to the nonmoving party. If the evidence establishes a prima facie case, the motion must be denied. In slightly different terms, this Court has held that a motion for directed verdict should be denied when the facts, when viewed in a light most favorable to the nonmovant, are such that reasonable persons could honestly reach different conclusions." (Citations omitted.)

In addition, directed verdicts in negligence actions are viewed with disfavor since the determination of liability greatly depends upon the resolution of conflicting factual matters. *Cole v Rife,* 77 Mich App 545, 549; 258 NW2d 555 (1977). We will discuss the propriety of a directed verdict as it applies to each individual defendant.

Defendant Detroit was subcontracted by defendant Stainless to install the automatic fire extinguishing system in plaintiff Red Run's kitchen. Plaintiffs allege that defendant Detroit was negligent in placing the system's fusible links and the manual pull. There was conflicting testimony as to whether the links' location conformed to the specifications or the intent of the system's instructional manual. The senior project engineer for defendant

Kidde, who partially designed the system and authored 90% of the system's instructional manual, testified that the links could be positioned in three different places but his testimony was unclear as to whether defendant Detroit had positioned the links in any of those three places. Furthermore, the fire inspector for the City of Royal Oak testified that insufficient heat had reached the links and that he believed that this fact explained why the automatic system did not trigger. Based on this testimony, combined with the fact that the system's links were not activated by the fire, the jury could have found that the links were improperly placed. As to the alleged negligence in placing the manual pull, there was conflicting testimony as to whether the manual pull was on an exit path from the broiler's hood, as required by the system's instructional manual. In light of this evidence, we find that a directed verdict in favor of defendant Detroit was erroneous; a jury could have found that defendant Detroit was negligent in positioning the fusible links and was negligent by failing to place the manual pull on an exit path as required.

Plaintiffs' theory of liability regarding defendant Kidde is one of products liability, *i.e.,* the system manufactured by defendant Kidde was defectively or negligently designed. Two theories of recovery in products liability actions are recognized in this state: that of negligence and that of implied warranty. *Johnson v Chrysler Corp,* 74 Mich App 532, 535; 254 NW2d 569 (1977), *lv den* 400 Mich 861 (1977). In *Abel v Eli Lilly & Co,* 94 Mich App 59, 70; 289 NW2d 20 (1979), *lv gtd* 410 Mich 869 (1980), this Court stated:

"Under a negligence theory, the plaintiff must establish the traditional common-law elements of duty,

breach, damage and causation. To establish breach of implied warranty, the plaintiff must show that a defect in the product, attributable to the manufacturer, caused his injuries." (Citation omitted.)

With respect to negligent design, this Court has stated that a manufacturer's liability is predicated upon whether he has failed to protect against a risk that is "unreasonable and foreseeable by the manufacturer". Such a test focuses on the reasonableness of the manufacturer's conduct since it is the duty of the manufacturer to exercise due care. *Durkee v Cooper of Canada, Ltd,* 99 Mich App 693, 699; 298 NW2d 620 (1980). Negligent design falls under both a negligence theory and an implied warranty theory of liability because a manufacturer has a duty to produce a reasonably fit product under either concept. *Elsasser v American Motors Corp,* 81 Mich App 379, 385; 265 NW2d 339 (1978).

We find that under the circumstances of this case the jury could have concluded that more than one manual pull location was required in plaintiff Red Run's kitchen or that the fusible links should have been designed to have been placed in a different location. The fact that the National Fire Protection Association does not require that there be more than one manual pull or that the fusible links be placed in a different location does not mean that defendant Kidde's design, which complied with such requirements, was not negligent. It is well accepted that compliance with industry or governmental standards is merely relevant, not conclusive, evidence of reasonably prudent conduct which the factfinder may consider in its determination of negligence. *Marietta v Cliffs Ridge, Inc,* 385 Mich 364, 369-370; 189 NW2d 208 (1971); *Elsasser, supra,* 386. We thus conclude that a

directed verdict in favor of defendant Kidde on plaintiffs' claim of negligent design was erroneous.

Plaintiffs claim that defendant Stainless breached an express warranty that the automatic fire extinguishing system would protect the kitchen's broiler and an implied warranty of fitness for a particular purpose. However, the kitchen equipment was provided by defendant Stainless in accordance with plaintiff Red Run's instructions. Although defendant Stainless contracted to provide the automatic dry chemical fire extinguishing system, plaintiff Red Run specified that the system be one manufactured by defendant Kidde. There is no evidence that defendant Stainless made an express warranty regarding the system manufactured by defendant Kidde; a directed verdict for defendant Stainless on this theory was proper.

With respect to the implied warranty of fitness claim, the Michigan Supreme Court stated in *F M Sibley Lumber Co v Schultz*, 297 Mich 206, 216-217; 297 NW 243 (1941), quoting with approval from *Dunn Road Machinery Co v Charlevoix Abstract & Engineering Co*, 247 Mich 398; 225 NW 592; 64 ALR 947 (1929):

> " ' "The essence of the [implied warranty of fitness] rule is, that the contract is executory; that the particular article is not designated by the buyer; that only his need is known; that he does not undertake or is not able to determine what will best supply his need, and therefore necessarily leaves the seller to make the determination and take the risk; and if these elements are wanting, the rule does not apply. *If, therefore, a known, described and defined article is agreed upon, and that known, described or defined article is furnished, there is no implied warranty of fitness* even though the seller is the manufacturer and the buyer disclosed to him the purpose for which the article was purchased." ' " (Emphasis added.)

Thus, since plaintiff Red Run requested defendant Stainless to provide a known, defined good which was subsequently furnished, a directed verdict in favor of defendant Stainless on the claim of implied warranty was also proper.

Furthermore, we find no basis for the plaintiffs' claim that defendant Stainless is vicariously liable for the fire damage. It is uncontroverted that defendant Stainless subcontracted defendant Detroit to supply and install the automatic fire extinguishing system. Generally, one who employs an independent contractor is not vicariously liable for the latter's negligence. *Misiulis v Milbrand Maintenance Corp,* 52 Mich App 494, 498; 218 NW2d 68 (1974). The rationale for this rule is that an independent contractor is not subject to the control of the employer, and, therefore, the employer should not be held vicariously liable for the negligence of the independent contractor. See *Nichol v Billot,* 406 Mich 284, 296; 279 NW2d 761 (1979). There was no evidence presented to show that defendant Detroit was an employee subject to defendant Stainless's control. Therefore, we find that a directed verdict in favor of defendant Stainless on the claim of vicarious liability was also proper.

Lastly, plaintiffs argue that the trial court erred by awarding defendant Kidde actual attorney fees. Under GCR 1963, 316.7(b)(1), if a plaintiff rejects a mediator's recommendation and the case proceeds to trial, the plaintiff must obtain a verdict which is ten percent greater than the mediation evaluation or pay actual costs to the defendant. Under GCR 1963, 316.6(h)(1), failure to file a written acceptance within 20 days after the mediation panel's evaluation is mailed to the parties constitutes rejection. In this case, the mediator recommended no cause of action regarding defendant Kidde, and

plaintiffs did not clearly accept that recommendation. Since the plaintiffs' failure to file a written acceptance of that recommendation constituted rejection of such, the trial court did not err by awarding actual attorney fees to defendant Kidde after it obtained a directed verdict at trial. However, since we have concluded that the directed verdict was erroneous, we hereby reverse the award of actual attorney fees to defendant Kidde until this case is ultimately decided. If at that time the plaintiffs fail to obtain a verdict against defendant Kidde, the plaintiffs may be required to pay the actual attorney fees to defendant Kidde.

The judgments for defendants Detroit Fire Extinguisher Company, Inc., and Walter Kidde & Company, Inc., are reversed and the case remanded.

The judgment for defendant Stainless Equipment Manufacturing Co. is affirmed.