**MICHIGAN MUTUAL INSURANCE COMPANY, a Michigan corporation, as subrogee of Center Manufacturing, Inc., Plaintiff,**

v.

**OSRAM SYLVANIA, INC., a New York corporation, formerly known as GTE Products Corporation, a New York corporation, and Lithonia Lighting Products, a Georgia corporation, jointly and severally, Defendants.**

No. 1:93–cv–541.

United States District Court,
W.D. Michigan,
Southern Division.

April 4, 1995.

Michelle F. Kitch, Morrison, Mahoney & Miller, Grand Rapids, MI, Charles R. Tuffley, Morrison, Mahoney & Miller, Southfield, MI, for plaintiff.

Scott L. Gorland, Marianne Lebeuf Wade, Pepper, Hamilton & Scheetz, Detroit, MI, for Osram Sylvania, Inc.

John B. Farrell, Robert F. MacAlpine, Welch, MacAlpine, Bahorshi, Bieglecki & Farrell, PC, Mount Clemens, MI, for Lithonia Lighting Products.

*OPINION AND ORDER ON DEFENDANT OSRAM SYLVANIA, INC.'S MOTION FOR SUMMARY JUDGMENT*

MILES, Senior District Judge.

This is a diversity action arising out of a fire which occurred at the Center Manufacturing, Inc. ("Center") plant in Byron Center, Michigan. The fire was allegedly caused by the failure of a metal halide lamp designed and manufactured by defendant Osram Sylvania, Inc. or its predecessor (both "Sylvania" herein). Plaintiff Michigan Mutual Insurance Company ("Michigan Mutual"), which insured Center's loss, has stepped in as subrogee of Center, asserting claims of "Breach of Express and Implied Warranties in Tort and/or Contract" (Count I) and "Negligence" (Count II).[1]

Sylvania has moved for summary judgment, arguing, *inter alia,* that Michigan Mutual's claims sounding in tort are barred by the economic loss doctrine and that its claims for breach of warranty under the Uniform Commercial Code are time-barred. For the reasons to follow, the court hereby **GRANTS** Sylvania's motion and **DISMISSES** the action with prejudice.

### DISCUSSION

Although some of the material facts are disputed, for purposes of this motion the court presumes Michigan Mutual's version to be true. On July 9, 1991, a 400 watt metal halide lamp manufactured by Sylvania exploded, causing a fire at Center's facility in Byron Center, Michigan. The explosion of the lamp showered white hot quartz particles onto a stack of cardboard cartons, setting them on fire. Michigan Mutual paid Center $2,435,933.45 in insurance benefits for loss and damage to Center's building and contents, in addition to loss of earnings and other expenses incurred by Center as a result of the fire. The Sylvania lamp in question was manufactured in January, 1984 and was likely installed at Center's facility between mid–1984 and early 1985. Center did

---

1. Michigan Mutual's complaint also named as a defendant Lithonia Lighting Products ("Lithonia"), the alleged manufacturer of the lamp fixture. However, mediation has been accepted as to Lithonia.

**994**

not purchase the lamp directly from Sylvania but from another vendor, whose identity is disputed.

In its brief in response to Sylvania's motion, Michigan Mutual expressly concedes that both its express and implied warranty theories under the UCC are barred by the applicable four-year statute of limitations contained in M.C.L. § 440.2725. Accordingly, the court will dismiss these claims with prejudice. Therefore, all that remains are Michigan Mutual's products liability tort claims.

■ The court concludes that Michigan Mutual's tort claims are barred by the economic loss doctrine, adopted by the Michigan Supreme Court in *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 486 N.W.2d 612, 618 (1992). Under this doctrine,

> [W]here a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC, including its statute of limitations....
>
> ... [T]he UCC provides remedies sufficient to compensate the buyer of a defective product for direct, incidental, and consequential losses, including property damage.... Where damage to other property was caused by the failure of a product purchased for commercial purposes to perform as expected, and this damage was within the contemplation of the parties to the agreement, the occurrence of such damage could have been the subject of negotiations between the parties.

486 N.W.2d at 618–20. More recently, in *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236 (6th Cir.1994), a case virtually on all fours with the present case, a Sixth Circuit panel applying Michigan law held that the economic loss doctrine barred the plaintiff's tort claims against the supplier of a section of hot reheat pipe which exploded and caused severe damage to the plaintiff's power generation facility.

Michigan Mutual argues that the economic loss doctrine does not apply to its claims against Sylvania because (1) Center was not in privity with Sylvania, (2) Center was a "consumer" which did not negotiate the terms of the lamp's sale or the specifications for its manufacture; and (3) at the time it purchased the lamp, Center could not have reasonably contemplated the possibility that the product could cause a catastrophic fire. The court finds each of these attempts to avoid the application of the economic loss doctrine to be without merit.

In *Neibarger*, the defendant in one of the two consolidated cases addressed in that decision was not in privity with the plaintiff.[2] Nonetheless, the court applied the economic loss doctrine to dismiss the plaintiff's claims.

Michigan Mutual's "consumer" argument is similarly meritless. Center's losses were commercial.[3] Moreover, although Michigan Mutual professes that Center could not negotiate the terms of sale for a product "mass produced by the tens of thousands," *see* Plaintiff's Brief in Opposition to Defendant Lithonia Lighting Products' Motion for Summary Judgment at 12,[4] Michigan Mutual's concession that Center has dealt with "numerous vendors" of electrical supplies over the years[5] underscores its ability to have

**2.** *See Neibarger*, 486 N.W.2d at 613 ("Plaintiffs ... contracted with defendant Charles Brinker to install a milking system. According to plaintiffs, the milking system was designed by defendants Universal Cooperatives, Inc., and Brinker, and was installed by Brinker to begin milking operations on September 1, 1979").

**3.** Michigan Mutual argues that Center's constitutional right to equal protection under both the United States and Michigan constitutions will be violated if the court fails to deem Center to be a "consumer" simply because it is a commercial enterprise. This argument has no place in a diversity action between two private parties. This argument also ignores the fact that it is the

nature of Center's use of the lamp (in a commercial setting), and not merely Center's corporate status, which results in the application of the economic loss doctrine. In sum, the court rejects the argument as wholly meritless.

**4.** Although the claims against Lithonia are not at issue here, Michigan Mutual's brief in response to the present motion incorporates arguments made in response to a similar motion by Lithonia, and the court has therefore considered those arguments.

**5.** *See* Affidavit of William C. Terry at ¶ 5 (attached as Exhibit 7 to Plaintiff's Brief in Opposi-

shopped around and negotiated the terms of purchase for the product. The court further notes that *Southgate Community School Dist. v. West Side Construction Co.,* 399 Mich. 72, 247 N.W.2d 884 (1976), on which Michigan Mutual relies heavily in support of this argument, is cited with apparent disapproval and expressly modified in *Neibarger,* 486 N.W.2d at 616 n. 19.

Finally, Michigan Mutual's argument that this case is exempted from application of the economic loss doctrine based upon Center's purported inability to foresee the risk of fire posed by the Sylvania lamp is also without merit. Although the initial warning issued by Sylvania to accompany its product did not specifically mention the possibility of fire, it did warn that

> ... Operation with incompatible equipment can cause lamp to shatter and may result in personal injury and damage to equipment and property. Lamp arc tube operates under pressure and at high temperatures and may shatter during operation.

Exhibit 3, Brief of Defendant Osram Sylvania, Inc. in Support of Motion for Summary Judgment.[6] As in *Detroit Edison,* it is foreseeable that a product which operates under high temperatures and under pressure could explode upon failure. 35 F.3d at 242. Fires caused by electrical products are simply not beyond the contemplation of commercial entities. This hazard was foreseeable, and Center "should have internalized some of the cost of the risks attendant to doing business." *Id.*[7]

Because Michigan Mutual concedes that its UCC claims are time-barred, and because the court concludes that the economic loss doctrine bars its tort claims against Sylvania,

the court finds it unnecessary to address the remaining issues raised by Sylvania's motion.[8]

### ORDER

The court hereby **GRANTS** Sylvania's motion and dismisses Michigan Mutual's claims against Sylvania in their entirety.

So ordered.

---

tion to Defendant Osram Sylvania, Inc.'s Motion for Summary Judgment).

6. Sylvania issued far more specific revised warnings after 1985, which expressly warn of the risk of fire. Michigan Mutual appears to concede that these warnings were adequate as a matter of law, although it has challenged the adequacy of the pre–1985 warnings. Given the court's present disposition, it need not address the issue of the adequacy of the pre–1985 warnings except to say that they warn of the risk of property damage.

7. Center apparently did internalize some of the costs of this risk by purchasing insurance from Michigan Mutual.

8. Sylvania has also argued that (1) it effectively limited its liability for damages, (2) Sylvania's revised warnings were sufficient to relieve it of any liability for failure to warn; (3) Michigan Mutual's experts have not identified a design defect; (4) Michigan Mutual has abandoned its claim of a manufacturing defect; and (5) Michigan Mutual cannot establish that Sylvania's lamp was the cause of the fire.