**FRANKENMUTH MUTUAL INSURANCE COMPANY, a Michigan corporation, Subrogee of George and Jill VanStratten, Plaintiff,**

v.

**ACE HARDWARE CORPORATION, an Illinois corporation, Defendant.**

No. 2:94–CV–168.

United States District Court, W.D. Michigan, Northern Division.

June 19, 1995.

**350**

William J. Ewald, Sullivan, Ward, Bone, Tyler & Asher, P.C., Grand Rapids, MI, for plaintiff.

Glenn W. Smith, Bensinger, Cotant, Menkes & Aardema, P.C., Marquette, MI, for defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

Plaintiff Frankenmuth Mutual Insurance Company, subrogee of George and Jill Van-Stratten, filed this two count complaint alleging negligence and breach of implied warranty against Defendant Ace Hardware Corporation in the Baraga County Circuit Court. Plaintiff alleges that Defendant's product, Ace Five Star Penetrating Oil Wood Stain, was the proximate cause of a fire which destroyed the VanStratten residence. Plaintiff, pursuant to the terms of its insurance policy, paid the VanStratten's insurance claim in the amount of $199,822.44. The VanStrattens subrogated their right to recovery to Plaintiff, and Plaintiff filed this action against Defendant Ace Hardware.

Defendant removed the action pursuant to 28 U.S.C. § 1441 on the basis that this Court has original jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship). This matter is currently before the Court on Defendant's motion for summary judgment.

Defendant contends that Count I, alleging negligence, must be dismissed pursuant to the Michigan economic loss doctrine. Defendant contends that Count II, alleging breach of implied warranty, must be dismissed for lack of privity of contract between Plaintiff's subrogors and Defendant.

### A. Count I, Negligence

Defendant moves for dismissal of Count I alleging negligence because this tort claim is barred by the Michigan economic loss doctrine. Defendant contends that because Plaintiff does not allege any personal injury, Plaintiff's rights and remedies should be limited to those provided by the Uniform Commercial Code.

The economic loss doctrine "bars tort recovery and limits remedies to those available under the Uniform Commercial Code where a claim for damages arises out of the commercial sale of goods and losses incurred are purely economic." *Neibarger v. Universal Cooperatives, Inc.,* 439 Mich. 512, 515, 486 N.W.2d 612 (1992) (footnote omitted).

Plaintiff contends that this action falls within one of the exceptions recognized in *Neibarger* which permit recovery in tort for injury to property other than the defective product itself, or for damage to the product itself caused by a safety hazard or which results from a "calamitous" event. *Id.* at 530, 486 N.W.2d 612.

*Neibarger* involved actions for negligence and breach of express and implied warranty brought by dairy farmers against manufacturers of milking machines for damages to their dairy herds. The Michigan Supreme Court held that the negligence actions were barred by the economic loss doctrine. "A contrary holding would not only serve to blur the distinction between tort and contract, but would undermine the purpose of the Legislature in adopting the UCC." *Id.* at 528, 486 N.W.2d 612.

Although a number of courts, state and federal, have addressed the economic loss doctrine since *Neibarger,* the precise contours of the doctrine remain unclear. Nevertheless, upon review of the case law, several general principles emerge.

Determining when the economic loss doctrine applies requires "consideration of the underlying policies of tort and contract law as well as the nature of the damages." *Neibarger,* 439 Mich. at 531, 486 N.W.2d 612. The distinctions between tort and contract law were summarized by the Sixth Circuit in

*Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236 (6th Cir.1994), as follows:

> Tort law, and products liability law specifi-. cally, governs the relationship between a consumer and a manufacturer, where it is impractical or impossible for the parties to negotiate either the terms of a sale or each party's duty to the other. In this context, product liability law places a burden on the manufacturer—the party in the better position to avoid the harm of a defective product—to produce a safe product. In contrast, contract law applies to commercial transactions, where the terms and conditions of a transaction can be negotiated to each party's satisfaction. Contract law operates on the premise that commercial actors, because of their ability to bargain for the terms of the sale, will be able to allocate the risks and costs of a product's potential nonperformance.

*Id.* at 239. Contrary to Defendant's contentions, personal injury is not a prerequisite to the application of tort law.

 It also appears that the economic loss doctrine is only applied in the commercial context. The *Neibarger* court explained the application of the doctrine as follows:

> [W]here a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedies are provided by the UCC, including its statute of limitations.

*Id.* at 527–28, 486 N.W.2d 612. The economic loss doctrine "distinguishes between cases involving the sale of goods for commercial purposes where the parties' economic expectations are protected by commercial and contract law and the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by tort law." *Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley, Inc.*, 821 F.Supp. 1238, 1240 (W.D.Mich.1993) (citing *Neibarger*, 439 Mich. at 519–23, 486 N.W.2d 612).

All the cases that have applied the doctrine of economic loss have involved commercial purchasers. *See, e.g., Neibarger, supra,* (dairy farm); *Detroit Edison, supra,* (utility company's products liability action against pipe manufacturer for damages from explosion barred by economic loss doctrine); *Bailey Farms, Inc. v. NOR–AM Chemical Co.*, 27 F.3d 188 (6th Cir.1994) (commercial farming corporation's tort action against supplier of soil fumigant for destruction of watermelon crop barred by economic loss doctrine); *Theuerkauf, supra,* (mink rancher's tort action against vaccine manufacturer for loss of stock barred by economic loss doctrine). The doctrine does not appear to be applicable to a consumer who purchases for personal, residential use.

Plaintiff, however, does not argue that the wood stain was not purchased for commercial purposes. Instead, Plaintiff focuses on the injury to property other than the defective product itself and the fact that the damage was caused by a safety hazard and resulted from a "calamitous" event.

 The economic loss doctrine, as applied in Michigan, recognizes an exception for damage to other property. However, as noted by the Sixth Circuit, *Neibarger* "significantly narrows" the other property exception while expanding the definition of economic loss. *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 241 (6th Cir.1994). "Under *Neibarger*, tort claims for damage to other property are barred by the economic loss doctrine if those losses are direct and consequential losses that were within the contemplation of the parties and that, therefore, could have been the subject of negotiations between the parties." *Id.*

Plaintiff's reliance on the safety hazard and calamitous event exceptions do not appear to be sufficient in and of themselves to avoid the application of the economic loss doctrine. In *Detroit Edison* there was an explosion at the utility company causing property damage and personal injury. 35 F.3d at 238. The court recognized that the damages to property and persons suggested a hazardous product and implicated concerns addressed by tort law. *Id.* at 242. Nevertheless, the court determined that the approach adopted by *Neibarger* focussed the inquiry "not so much on the magnitude or extent of the damage as on the parties involved and the nature of the product's use." *Id.* Because power plants are aware of the

dangers associated with pipe failure, the court held that the risk of pipe failure was within Detroit Edison's contemplation. Accordingly, the damages from the explosion were economic losses and the economic loss doctrine barred any tort claims by Detroit Edison against the pipe manufacturer. *Id.*

■ Applying these principles to the sparse record before this Court, the Court concludes that Defendant has not shown that it is entitled to summary judgment on Count I.

It appears from the limited facts presented to this Court that the Defendant's product was used in the VanStratten residence. The parties have not discussed whether or not there was a commercial purpose in the purchase of the wood stain.

The parties agree that there is an issue of fact as to whether the homeowners or their contractor purchased the stain. The circumstances surrounding the purchase of the stain are important to a determination of whether this suit involves the relationship between a consumer and a manufacturer where it is impractical for the parties to negotiate either the terms of a sale and each party's duty to the other, or whether it involves the sale of goods for commercial purposes where the parties' economic expectations are protected by commercial and contract law. From the record presented, the Court cannot determine whether the fire damage to the residence was a direct and consequential loss that was within the contemplation of the parties and whether it could have been the subject of negotiations between the parties.

There has not been sufficient factual development of the circumstances of the purchase and intended use of the product for the Court to determine, as a matter of law that Plaintiff's negligence claim is barred by the economic loss doctrine.

### B. Count II, Breach of Implied Warranty

Defendant has also moved for summary judgment on Count II of Plaintiff's complaint which alleges breach of implied warranty. Defendant contends it is entitled to judgment on Count II because Plaintiff lacks privity of contract. Defendant maintains that although Michigan has abrogated the privity requirement for implied warranty claims where there is personal injury, privity is still required to maintain UCC implied warranty claims where, as here, only direct economic/property loss is alleged.

For purposes of this motion Plaintiff assumes the contractor purchased the wood stain and that there is no privity of contract between itself and Defendant.[1] Plaintiff contends, however, that contrary to Defendant's contentions, privity of contract is not a required element for breach of implied warranty where property loss is alleged.

Defendant's contention that privity is required for a breach of warranty claim finds support in *Downriver Internists v. Harris Corp.*, 929 F.2d 1147 (6th Cir.1991). In *Downriver* the court held that although privity is no longer required in Michigan tort law for a plaintiff who has suffered personal injury to recover on a breach of warranty theory,[2] the privity requirement still exists for a breach of contract action for economic losses. *Id.* at 1149.

■ Defendant's argument, however, assumes that Plaintiff's breach of implied warranty claim is brought pursuant to the UCC or under a contract theory. This assumption is not warranted. Both counts of Plaintiff's complaint may be premised on tort law. Michigan recognizes two theories of recovery in products liability actions: negligence and implied warranty. *Hartford Fire Ins. Co. v. Walter Kidde & Co.*, 120 Mich. App. 283, 291, 328 N.W.2d 29 (1982). There

---

1. As subrogee, Plaintiff steps into the shoes of the VanStrattens. Accordingly, if the VanStrattens purchased the wood stain, there would be privity of contract between Plaintiff and Defendant. There is, however, as previously stated, a question of fact as to whether the wood stain was purchased by the VanStrattens or their contractor.

2. Section 2–318 of the Uniform Commercial Code extends a seller's warranty to any natural person in the household of the buyer who is injured in person by breach of the warranty. M.C.L. § 440.2318; M.S.A. § 19.2318.

is nothing in the complaint to suggest that Plaintiff has filed Count II under a breach of contract or UCC theory as opposed to a product liability theory.

Michigan's Products Liability statute applies to injuries to person and to property. M.C.L. § 600.2945; M.S.A. § 27A.2945. The UCC and other contract-based concepts are inapplicable in tort actions alleging breach of a legally-implied warranty. *Jones v. United Metal Recyclers*, 825 F.Supp. 1288, 1294 (W.D.Mich.1993) (citing cases).

> While some of the concepts (e.g., implied warranty) developed by the courts in creating the consumer's right of direct action against the manufacturer have been enacted into statute, the UCC draftsmen have acknowledged that the consumer's remedy is not statutory, but essentially a judicial development which the courts should be free to develop further.

*Parish v. B.F. Goodrich Co.*, 395 Mich. 271, 280, 235 N.W.2d 570 (1975).

In *Southgate Community School District v. West Side Construction Co.*, 399 Mich. 72, 247 N.W.2d 884 (1976), the Michigan Supreme Court recognized that a plaintiff could maintain a products liability action for breach of implied warranty even though there was no privity of contract and even though there was no personal injury involved. The court cited with approval the following statement from *Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 609, 182 N.W.2d 800 (1970):

> On principle the manufacturer should be required to stand behind his defectively-manufactured product and held to be accountable to the end user even though the product caused neither accident nor personal injury. The remote seller should not be insulated from direct liability where he has merely mulcted the consumer.

399 Mich. at 75, n. 1, 247 N.W.2d 884. This position was reaffirmed by the court in *Sullivan Industries, Inc. v. Double Seal Glass Co.*, 192 Mich.App. 333, 342–43, 480 N.W.2d 623 (1991). *Sullivan* also rejected the majority opinion in *Auto Owners Ins. Co. v. Chrysler Corp.*, 129 Mich.App. 38, 341 N.W.2d 223 (1983), relied on by Defendant for the proposition that a breach of warranty claim for economic injuries requires privity of contract.

*Sullivan,* 192 Mich.App. at 342–43, 480 N.W.2d 623.

Because a breach of implied warranty claim could proceed under a tort theory without privity and without personal injury, and because there has not been sufficient factual development for the Court to determine as a matter of law that the economic loss doctrine bars Plaintiff from bringing a tort claim, Defendant is not entitled to summary judgment on Count II.

For the reasons stated above, the Court concludes that Defendant's motion for summary judgment must be denied. An order consistent with this opinion will be entered.

### ORDER

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendant Ace Hardware Corporation's motion for summary judgment (Docket # 37) is **DENIED.**