REPUBLIC INSURANCE COMPANY, Plaintiff,

v.

BROAN MANUFACTURING CO., INC., Defendant.

Civil Action No. 96–40121.

United States District Court, E.D. Michigan, Southern Division.

March 31, 1997.

John D. Mulvihill, Bailey & Rossi, Bloomfield Hills, MI, for Plaintiff.

Steven D. Brock, Harvey, Kruse, Westen & Milan, P.C., for Defendant.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On February 23, 1996, plaintiff Republic Insurance Company filed a subrogation action in state court against Broan Manufacturing Company, Inc., which was removed to this court on March 28, 1996 based upon diversity of citizenship, 28 U.S.C. §§ 1332, 1441. Presently before this court is defendant's motion for summary judgment. For the following reasons, defendant's motion will be denied.

### FACTS

In 1987, James and Mary Bay moved into a residence located at 9079 Danzig Street in Livonia, Michigan. A ceiling fan (model 662/668) manufactured by the defendant had been previously installed in the basement of the home.

On July 9, 1994, while the Bay's were away from their premises, the ceiling fan's motor seized up and overheated, causing the plastic fan blade to ignite. Flames spread to adjacent combustibles and ceiling material, and as a result of this fire, the Bay's incurred property damage in excess of $139,000.00. No personal injury was suffered.

The Bays received compensation for their losses under a homeowners insurance policy issued by plaintiff. After honoring its obligation to the Bays, plaintiff became subrogated to any and all claims that the Bays could assert against the manufacturer of the ceiling fan. Plaintiff thus filed the instant two count complaint against the designer/manufacturer of the ceiling fan.

On January 16, 1997, defendant filed a motion for summary judgment. In its motion, defendant makes two arguments. First, defendant contends that plaintiff's tort claims are barred by the economic loss doctrine. Second, defendant maintains that plaintiff's breach of warranty claims, insofar as they are predicated upon the Uniform Commercial Code ("UCC"), are time-barred. Each argument will be addressed *seriatim.*

### LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of

material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## PLAINTIFF'S TORT CLAIMS ARE NOT BARRED BY THE ECONOMIC LOSS DOCTRINE

■ Plaintiff's complaint charges defendant with two counts: Count I alleges negligence and count II asserts, *inter alia,* claims of breach of express and implied warranty that the fan was of merchantable quality and was reasonably fit for its expected, anticipated or foreseeable use. Defendant's first ground for summary judgment is that these claims are product liability tort claims, which are barred by the economic loss doctrine.

■ Simply stated, the economic loss doctrine "bars tort (product liability) recovery and limits remedies to those available under the Uniform Commercial Code where a claim for damages arises out of the commercial sale of goods and losses incurred are purely economic." *Neibarger v. Universal Cooperatives,* 439 Mich. 512, 515, 486 N.W.2d 612 (1992) (footnote omitted). The doctrine has no application outside the commercial realm and therefore does not operate to bar tort claims in lawsuits concerning "the sale of defective products to individual consumers who are injured in a manner which has been traditionally been remedied by resort to the law of torts." *Id.* at 521, 486 N.W.2d 612. *See also Frankenmuth Mut. Ins. Co. v. Ace Hardware Corp.,* 899 F.Supp. 348, 351 (W.D.Mich.1995). In cases where the economic loss doctrine does not apply, a plaintiff is not limited to UCC theories of recovery.

"Determining when the economic loss doctrine applies requires 'consideration of the underlying policies of tort and contract law as well as the nature of damages.' " *Frankenmuth,* 899 F.Supp. at 350. After all, the principal rationale behind the economic loss doctrine is that "tort law is a superfluous and inapt tool for resolving purely commercial disputes" and that contract law exclusively should govern commercial controversies. *Miller v. United States Steel Corp.,* 902 F.2d 573 (7th Cir.1990). The distinctions between tort and contract law were highlighted by the Sixth Circuit in *Detroit Edison v. NABCO, Inc.,* 35 F.3d 236 (6th Cir.1994) (cited in *Frankenmuth,* 899 F.Supp. at 351):

> Tort law, and products liability law specifically, governs the relationship between a consumer and a manufacturer, where it is impractical or impossible for the parties to negotiate either the terms of a sale or each party's duty to the other. In this context, product liability law places a burden on the manufacturer—the party in the better position to avoid the harm of a defective product—to produce a safe product. In contrast, contract law applies to commercial transactions, where the terms and conditions of a transaction can be negotiated to each party's satisfaction. Contract law operates on the premise that commercial actors, because of their ability to bargain

for the terms of the sale, will be able to allocate the risks and costs of a product's potential performance.

*Id.* at 239.

The economic loss doctrine was adopted by the Michigan Supreme Court in *Neibarger v. Universal Cooperatives, Inc.,* 439 Mich. 512, 486 N.W.2d 612 (1992). In that case, plaintiffs were commercial dairy farmers who had purchased a milking system in 1979, and who discovered a defect in design and installation of the milking equipment seven years later. The defect caused ailment and even death in plaintiffs' cattle and prevented plaintiffs from reaching their full milking potential. Ultimately, plaintiffs filed a lawsuit against the installer and designer of the milking system alleging breach of express warranty, breach of implied warranty and negligence.

The Michigan Supreme Court held that plaintiffs' tort claims fit squarely within the parameters of the economic loss doctrine. Plaintiffs had purchased the milking machine for a business purpose, to wit: to "expand the size of their herds" in order to "increase the size of their income." *Id.* Therefore, the court concluded that the damages plaintiffs suffered (e.g. decreased milk production and cattle medical problems) were nothing more than defeated commercial expectations, which the UCC could best remedy. All plaintiffs' tort claims were barred on economic loss doctrine grounds, and the court remarked that "[a] contrary holding would not only serve to blur the distinction between tort and contract, but would undermine the purpose of the Legislature in adopting the UCC." *Id.* at 528, 486 N.W.2d 612.

The economic loss doctrine articulated in *Neibarger* was used to bar plaintiff's tort claims in *Michigan Mutual Insurance Co. v. Osram Sylvania, Inc.,* 897 F.Supp. 992 (W.D.Mich.1995), a case cited by defendant. In *Michigan Mutual,* plaintiff (as subrogee) sought recovery in tort for property damage, lost earnings and other expenses incurred by the subrogor, Center Manufacturing, Inc. ("Center"), after a halide lamp exploded at a manufacturing plant. Using the reasoning in *Neibarger,* the court found that since the lamp was purchased for use in a commercial setting, the losses suffered from the explo-

sion were "purely economic." *Id.* at 994, n. 3. The court held that the economic loss doctrine precluded plaintiff from seeking recovery in tort.

In *Detroit Edison Co. v. NABCO, Inc.,* 35 F.3d 236 (6th Cir.1994), another case cited by defendant, the court applied the economic loss doctrine to bar plaintiff-utility company from recovering in tort against a power line supplier for damages suffered when an allegedly defective pipe line exploded at a power plant injuring seventeen people and causing extensive property damage. Critical to the holding was the court's finding that the buyer and seller of the pipe line were "sophisticated commercial entities" which "were in a position to fully negotiate, before the fact, the issue of potential liability," *Id.* at 242.

Although the defendant finds *Michigan Mutual* and *Detroit Edison* to be somewhat analogous to the instant case, they are highly distinguishable. In *Michigan Mutual* and *Detroit Edison,* the injurious events occurred at commercial facilities as opposed to the situation in this case, in which the fire occurred in a private residence. Also, the buyer and seller of the products at issue in *Michigan Mutual* and *Detroit Edison* were sophisticated commercial entities, but both parties to the original transaction in the case *sub judice* may not have been commercial creatures. Defendant in the case at hand has not presented any evidence showing that two commercial parties were involved in the purchase and sale of the ceiling fan. Another distinction between *Detroit Edison* and *Michigan Mutual* and this case is that in the former two cases the allegedly defective products were procured for a commercial purpose. In the instant case, defendant has not shown that there was a business aim for purchasing the ceiling fan and indeed, plaintiff insists that there was a non-commercial objective.

The instant case closely resembles the case of *Frankenmuth Mutual Ins. Co. v. Ace Hardware Corp.,* 899 F.Supp. 348 (W.D.Mich. 1995), in which the court found that a genuine issue of material fact existed as to the circumstances surrounding the purchase of the product, including the identity of the purchaser, and that this precluded entry of

summary judgment for defendant on plaintiff's tort claims based on economic loss doctrine grounds. In *Frankenmuth*, an insurance company, as subrogee to the rights of George and Jill VanStratten, filed a two count complaint alleging negligence and breach of implied warranty against Ace Hardware Corporation. Plaintiff claimed that defendant's product, Ace Five Star Penetrating Oil Wood Stain, was the proximate cause of a fire which destroyed the VanStratten residence. From the record presented, the court could not determine whether the purchaser of the stain was a homeowner or a contractor. The court stated that if a contractor purchased the stain from Ace Hardware, then it was presumably for a commercial purpose, that the fire damage to the residence was therefore most likely a direct and consequential loss within the contemplation of the parties at the time of purchase, and that the economic loss doctrine would as a result apply to such a business transaction. *Id.* at 352. However, if a homeowner purchased the stain, then the economic loss doctrine would not come into play since the sale would have been a consumer transaction between parties of disparate bargaining power. *Id.* Ultimately, the court concluded that such a material factual issue precluded the entry of summary judgment in favor of defendant on plaintiff's tort claims. *Id.*

In this court's opinion, while the result appears to be appropriate, the reasoning in *Frankenmuth*, 899 F.Supp. 348 (W.D.Mich. 1995) is questionable. Assuming for the sake of argument that the identity of the purchaser was known in that case as well as in the instant case, and the purchaser was determined to be a contractor in both cases, then it is not necessarily true that the losses sustained would be purely economic, calling for application of the economic loss doctrine. If a contractor did indeed purchase the products at issue in *Frankenmuth* and the instant case, then the losses nevertheless may be non-economic because the injury sustained in these cases is of the type traditionally remedied by a resort to the law of product liability. *Neibarger*, 439 Mich. at 520–21, 486 N.W.2d

612. Both cases involve property damage to a consumer using an allegedly defective product in a household setting.[1] Imposing liability on the manufacturer-defendants in *Frankenmuth* and in the case at hand, would further the purposes of product liability law, such as ensuring that manufacturers carry out their duty to design and produce safe products utilized in personal residences and allocating the risk of dangerous and unsafe products to the manufacturer as opposed to individual consumers. *Id.* at 523, 486 N.W.2d 612. Since the purposes of tort law would be furthered, the economic loss doctrine should not apply.

In fact, defendant concedes that if the Bays had suffered personal injury, as opposed to mere property damage, then the economic loss doctrine would not bar plaintiff's tort claims, notwithstanding the fact that a contractor may have purchased the fan. In this court's opinion, defendant has made an unjustifiable distinction. Once again, the economic loss doctrine clearly has no application in cases where a plaintiff has been injured in a manner which has traditionally been remedied through the law of product liability. Since product liability law does not differentiate between plaintiffs who have suffered personal injury and those that have sustained property damage, *See* Mich. Comp.Laws § 600.2945(h), then the economic loss doctrine should not discriminate along such lines either. To be sure, if the economic loss doctrine made such a distinction in cases such as the instant case, where a household consumer endured a loss due to an allegedly defective good, but the identity of the original purchaser of the product is unknown, it would lead to bizarre results. Consider the following hypothetical:

Contractor ("C") purchases two fans. C installs one of the fans in Consumer A's home and the other in Consumer B's home. Consumer A suffers a slight injury to his finger, proximately caused by a manufacturing defect in the fan. Consumer

1. Both parties agree that if the Bray's suffered personal injury that the economic loss doctrine would be wholly inapplicable.

B's house burns down to the ground due to a manufacturing defect in the fan.

Under defendant's understanding of the economic loss doctrine, only Consumer A could bring a product liability claim. Consumer B would be precluded from pursuing a tort remedy, since a contractor purchased the fan which caused his injury and because he suffered only property damage. This court perceives no justifiable reason for distinguishing between plaintiffs A and B in that fashion. Both sustained damages of the type typically remedied by product liability law. Indeed, the term "product liability action" is defined under Michigan law as "an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or *damage to property* caused by or resulting from the production of a product." Mich.Comp.Laws § 600.2945(h) (1996) (emphasis added). Under the facts as delineated in the illustration, application of the economic loss doctrine should not pivot on the type of damage suffered by the plaintiff (e.g. personal injury v. property damage), but rather should turn on considerations such as the use of the product (e.g. commercial v. residential), characteristics of plaintiff (e.g. manufacturer v. private consumer) and policies implicated in the case (e.g. contract law v. tort law).

In sum, this court finds that defendant has not met its burden of showing that it is entitled to summary judgment as a matter of law on plaintiff's tort claims. Accordingly, plaintiff's motion for summary judgment to dismiss the tort claims contained in Counts I and II must be denied.

### PLAINTIFF HAS NOT ASSERTED A BREACH OF WARRANTY CLAIM UNDER THE UCC

Defendant has also moved for summary judgment on Count II of plaintiff's complaint which is entitled "breach of contract and express and implied warranties," arguing that to the extent it contains UCC claims,[2]

such claims are barred by a four year statute of limitations. Section 2–725 of the UCC, Mich.Comp.L. § 440.2725, provides, in pertinent part, as follows:

(1) An action for breach of any contract must be commenced within 4 years after the cause of action has accrued ...

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Mich.Comp.L. § 440.2725. *See also Neibarger v. Universal Cooperatives,* 439 Mich. 512, 520, 486 N.W.2d 612 (1992) ("An action to recover for breach of warranty under the UCC must be commenced within four years of tender of delivery of the goods, regardless of the time of discovery of the breach.").

■ Plaintiff responds to defendant's argument by asserting that Count II's warranty claims are not brought pursuant to the UCC. Plaintiff insists that it is seeking to recover, strictly in tort, under an implied warranty theory. Michigan recognizes a cause of action for implied warranty in tort in addition to the contractual UCC warranty claims. *Hartford Fire Ins. Co. v. Walter Kidde,* 120 Mich.App. 283, 292, 328 N.W.2d 29 (1982) ("To establish breach of implied warranty [in tort], the plaintiff must show that a defect in the product, attributable to the manufacturer, caused his injuries.").

■ Since the plaintiff asserts that Count II only contains tort claims, and does not contain any UCC claims, this court need not resolve whether UCC claims would be time-barred. It follows then that defendant's motion for summary judgment on all plaintiff's UCC claims must be denied since there are no such claims involved in this litigation.[3]

---

**2.** Count II does not mention the UCC or specifically allege violations of its provisions.

**3.** If there were such claims, the UCC's four-year statute of repose most certainly would bar such claims. In this case, plaintiff has admitted that

the fan was delivered to the Bay's residence prior to February 23, 1992. However, plaintiff did not file suit until February 23, 1996. The UCC requires that an implied warranty claim be brought four years from the date of tender of delivery.

In regard to the implied warranty in tort claim contained at Count II, it is seasonable. The statute of limitations for such a claim is set out at Section 600.5805(9) of the Michigan Complied Laws. This statute indicates that "the period of limitations is three years for product liability actions," including implied warranty in tort claims. The statutory period commences when the accident occurs or when the person discovers, or knows, or has reason to know of the act which caused the injury. *City of Huntington Woods v. Wines,* 122 Mich.App. 650, 332 N.W.2d 557 (1983). In this case, the fire occurred on July 9, 1994 and plaintiff filed its complaint on February 23, 1996, within the three year statutory time-frame.

### ORDER

**IT IS HEREBY ORDERED** that for the reasons expressed in this court's opinion and order, defendant's motion for summary judgment is **DENIED.**

**SO ORDERED.**